No. 100,881

STATE OF KANSAS, *Appellee*, v. CALVIN RAY BROWN, *Appellant*.

(244 P.3d 267)

Opinion filed January 7, 2011.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Edmond D. Brancart*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, J.: This is a direct appeal from Calvin Ray Brown's conviction by a jury for one count of attempted aggravated indecent liberties with a child in violation of K.S.A. 21-3301 and K.S.A. 21-3504(a)(3)(A) and one count of aggravated indecent solicitation in violation of K.S.A. 21-3511(a). The trial court sentenced the defendant to a life sentence under K.S.A. 21-4643 ("Jessica's Law"), without the possibility of parole for 25 years, for Count I and 32 months to run concurrent with the primary offense for Count II. Jurisdiction is proper under K.S.A. 22-3601(b)(1).

## FACTS AND PROCEDURAL BACKGROUND

In autumn 2007, Brown lived with Nakisha H. and her two daughters, M.H. (age 2) and L.H. (age 10). Brown was, at one time, married to Nakisha's mother, and Nakisha had a close relationship with him.

On the night of November 3, 2007, Nakisha went out with her sisters to celebrate a birthday. Brown was babysitting M.H., L.H., and their four male cousins.

The children were on the fold-out sofa bed in the living room, watching television, and Brown stayed downstairs in his room. At some point, L.H. fell asleep while watching T.V. L.H. testified that Brown woke her up by grabbing her arm and taking her downstairs to his room.

L.H. stated that Brown had L.H. sit on his couch and he stood in front of her and said, "I know what you and your cousin . . . have been doing. And if you don't do what I tell you to do, I'm going to tell your mom on you, too." L.H. testified that Brown was "talking real nasty to me like he wanted to do something with" her. L.H. was scared and ran up the stairs. She got M.H., who was with one of her cousins, and went to her room.

L.H. testified that Brown followed her to her room and said, "[I]f I can't get nothing from you, can I just rub on your butt." He asked her several times and she repeatedly said no.

L.H. then ran around Brown and ran out of the house in her nightclothes, and across the street to her great-grandmother's house. Her great-grandmother, J. Williams, lived across the street along with L.H.'s grandmother, D. Moore. L.H. rang Williams' doorbell and knocked on her door. L.H. also knocked on Moore's window on the ground floor of the house. No one answered the door, so L.H. ran to her friend's house behind Williams' home. L.H. testified that Brown was chasing her.

Williams testified that she heard her doorbell ringing and knocking on her front door in the middle of the night on November 3, 2007. When she opened the door, no one was there but then Brown came around from the side of her house "mumbling something like he's got a condom in his billfold."

When L.H. ran to her friend's home, no one answered the door. L.H. saw Brown standing on the side of Williams' house. She continued to run, and she went up the block to the home of her uncle, K. Union. Union answered the door and L.H. told him, "[M]y pawpaw tried to molest me." Union testified that L.H. told him that Brown tried to force himself on her and was chasing her down the street. Union did not see anyone in the street, but he called Nakisha and the police.

The police arrived shortly before Nakisha and her sisters. Officer Darrell M. Forrest talked to L.H. Officer Forrest testified that L.H. told him that "she was asleep and her grandfather came and woke her up, grabbed her by the arm and took her downstairs, began to touch her in the private areas on top of the clothing. . . . And told her not to say anything. . . . . She said she yelled no, and then she ran upstairs and ran out of the house."

L.H. also told her mother, Nakisha, what had happened. L.H. told her mother "that he had tried something with her." Nakisha left L.H. at Union's home and went back to her house to see Brown. Officer Michael Simmons arrested Brown, testifying that Brown was mumbling in the back of the patrol car and definitely smelled like he was intoxicated.

On November 15, 2007, Nakisha took L.H. to Sunflower House where Jennifer Coughlin, an interview specialist, interviewed her about what happened with Brown on November 3. L.H.'s interview with Coughlin was videotaped and used by the State at trial without objection from Brown.

The State initially charged Brown with one count of aggravated indecent liberties with a child. The information contained Brown's date of birth and stated he was over the age of 18. The first and second amended information charged Brown with attempted aggravated indecent liberties with a child and aggravated indecent solicitation of a child. The amended informations did not include Brown's age.

At trial, neither party objected to the instructions given or requested any additional instructions. The instructions relating to the attempted aggravated indecent liberties charge failed to instruct the jury to find that Brown was over 18 years of age at the time of the offense. The jury convicted Brown of both counts, and the district court sentenced Brown to a hard 25 sentence for the primary offense, attempted aggravated indecent liberties, and 32 months for aggravated indecent solicitation, to run concurrent with the hard 25 sentence.

### ANALYSIS

*Prior Consistent Statements Were Not Preserved for Appeal*

Brown argues that, before L.H. testified, the jury heard statements she made to Kevin Union, Nakisha H., and Jennifer Coughlin. Brown did not object at any time during the testimony of Union, Nakisha, or Coughlin.

On direct examination by the State, Union testified:

"Q.  Okay. And did you ask her what she was doing?
"A.  Yes.
"Q.  Okay. And what happened? What did she say?
"A.  She told me that Calvin started or tried to force himself on her.
"Q.  Okay.
"A.  After that, I stepped outside to look around. Because in the process of her telling me what's going on, she said that he had chased her up the street.
"Q.  Okay.
"A.  So I stepped outside. I didn't see anyone. I came back in and started calling people and had called 911.

. . . .

"Q.  Okay. And did you talk to [L.H.] anymore about what had happened?
"A.  I asked her again what happened. And she told me the same thing. And to be honest with you, I didn't want to hear anymore. So I just left it at that and waited for the police to show up.
"Q.  Okay and when you say to be honest you didn't want to hear anymore, why was that?
"A.  It's not a comfortable thing to hear, especially when you have four daughters of your own. You don't want to hear something like that."

During cross-examination, Union testified:

"Q.  All right. And you didn't talk to — did you talk to [L.H.] about any of the details?
"A.  No.
"Q.  You said you didn't want to hear that?
"A.  I didn't say it to her.
"Q.  Okay.
"A.  I just — that's just what I felt.
"Q.  Right. And you just decided to call the police and let them handle it. Correct?
"A.  Yes."

Nakisha testified to the following during the State's direct examination:

"Q. Okay. And so you leave that night. And then what's the next thing you hear from someone—

"A. I get a phone call from Kevin saying you need to come home now, like now.

"Q. Okay. Did he tell you why?

"A. It had something to do with [L.H.] and Calvin. Come home now, like come home.

. . . .

"Q. Okay. And so when you responded, you went to Kevin Union's house. And what did you do there?

"A. I checked on my daughter to make sure — to find out what was going on and to make sure she was okay.

"Q. Okay. And what did you find out?

"A. That he had tried something with her.

"Q. Okay. And did you ask her for specific details?

"A. I really didn't. I just heard that part and left the house and went down to my house where Calvin was."

Lastly, Coughlin did not testify regarding what L.H. told her in her interview at Sunflower House. Rather, Coughlin testified as to her own expertise and training, and she provided testimony to lay the foundation for the videotape of L.H.'s interview at Sunflower House. Thus, Brown's argument that Coughlin's testimony included inadmissible prior consistent statements is incorrect. It is unclear from Brown's brief whether he also argues that the jury's viewing of L.H.'s videotaped interview at Sunflower House was inadmissible as a prior consistent statement. Thus, we do not consider Brown's arguments related to Coughlin's testimony.

Without a contemporaneous objection, generally, this issue would not be preserved for appeal. K.S.A. 60-404; see *State v. Hollingsworth*, 289 Kan. 1250, 1255, 221 P.3d 1122 (2009) (citing *State v. Bryant*, 285 Kan. 970, Syl. ¶ 6, 179 P.3d 1122 [2008] ["As a general rule, a party must make a timely and specific objection to the admission of evidence in order to preserve the issue for appeal."]). Brown contends these prior consistent statements bolstered L.H.'s testimony, implicating his fundamental right to a fair trial and also prejudicing the jury. See *State v. Richmond*, 289 Kan. 419, 428, 212 P.3d 165 (2009); *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009).

Recently, we refused to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right. See *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) (citing *Richmond*, 289 Kan. at 429-30 [expressing concern that the contemporaneous objection rule " 'case-law exceptions would soon swallow the general statutory rule' "]); *Hollingsworth*, 289 Kan. at 1256-57; *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]; *State v. Mays*, 277 Kan. 359, 384-85, 85 P.3d 1208 [2004]); see also *State v. Johnson*, 286 Kan. 824, 839, 190 P.3d 207 (2008) (holding that a failure to object to the admission of prior consistent statements resulted in the issue not being preserved for appeal).

This court has stated:

" 'The purpose of the rule requiring a timely and specific objection is to give "the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial." [Citation omitted.]' " *Richmond*, 289 Kan. at 429 (citing *King*, 288 Kan. at 342).

In *State v. Johnson*, this court considered a similar issue to the one raised by Brown. There the trial court permitted law enforcement officers to testify about what witnesses told them before the witnesses testified at trial. 286 Kan. at 838-39. The court found that, while "a violation of the right to confront witnesses can occur if a statement is admitted and the witness is not called to testify," but in *Johnson*, the State did call the witnesses and the defendant was able to cross-examine them regarding their statements. 286 Kan. at 839.

The *Johnson* court then went on to note that, with no constitutional issue implicated, Johnson's argument was actually one of prejudice. Johnson argued that admission of the consistent statements amounted to bolstering the witnesses' credibility. The court went on to find:

"An argument based upon potential prejudice does not erase the need for a contemporaneous objection; in fact, it highlights the policies underlying the rule. The contemporaneous objection rule is designed to give the trial court the opportunity to correct or avoid error. *State v. Boyd*, 257 Kan. 82, 89, 891 P.2d 358 (1995). Additionally, as applicable to this case, the trial court is in a better position to weigh the probative versus prejudicial value of evidence. See, *e.g., State v.*

*Garcia*, 285 Kan. 1, 18-19, 169 P.3d 1069 (2007). Therefore, it is inappropriate for this weighing to occur for the first time on appeal." 286 Kan. at 840.

In Kansas, previous statements of persons present at trial are not hearsay and are admissible if that person is available for cross-examination and the statement would be admissible if made by the declarant while testifying. K.S.A. 60-460(a); see *Johnson*, 286 Kan. at 839; *State v. Kesselring*, 279 Kan. 671, 692, 112 P.3d 175 (2005) (holding investigator's testimony regarding hearsay statements of various witnesses who were testifying at trial properly admitted pursuant to K.S.A. 60-460[a]); *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000) (finding that witnesses' testimony of prior consistent statements of victim who testified at trial was not hearsay under K.S.A. 60-460[a]); *State v. Aldrich*, 232 Kan. 783, 784, 658 P.2d 1027 (1983) (holding officer's testimony of prior consistent statements of victim who was testifying at trial properly admitted pursuant to K.S.A. 60-460[a]); *State v. Taylor*, 217 Kan. 706, 713, 538 P.2d 1375 (1975) (holding admission of officers' testimony regarding hearsay statements of victim during investigation comes "squarely within" K.S.A. 60-460[a]).

Here, Brown did not object to admission of the statements during the testimony of Union, Nakisha, or Coughlin. As in *Johnson*, L.H. actually testified at trial and Brown was able to cross-examine her regarding her statements to Union, Nakisha, and Coughlin. Under the holding in *Johnson*, Brown failed to preserve this issue for appeal. Further, because L.H. was present and testified at trial regarding her statements to Union, Nakisha, and Coughlin, their prior statements were admissible under K.S.A. 60-460(a).

## Voluntary Intoxication Instruction

Brown argues that the district court should have instructed the jury on voluntary intoxication because the crimes charged against him—aggravated indecent solicitation and attempted aggravated indecent liberties—required proof of specific intent, and there was sufficient evidence that Brown was intoxicated when he committed the crimes, thus preventing him from forming the requisite intent.

"A defendant is entitled to instructions on the law applicable to his or her theory of defense if there is evidence to support the theory. However, there must be

evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory." *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008).

Because Brown failed to object to the district court's failure to give an instruction, we review the issue under the clearly erroneous standard. *State v. Roberson*, 272 Kan. 1143, 1153, 38 P.3d 715, *cert. denied* 537 U.S. 829 (2002). "Instructions are clearly erroneous if there is a real possibility the jury would have rendered a different verdict had the instruction error not occurred." *State v. Marler*, 290 Kan. 119, 124, 223 P.3d 804 (2010) (citing *State v. Vasquez*, 287 Kan. 40, 51, 194 P.3d 563 [2008]).

Brown's second issue on appeal requires that this court find that attempted aggravated indecent liberties and aggravated indecent solicitation are specific intent crimes. Recently this court explained: "The distinction between general intent and specific intent crimes is 'whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts.' [Citation omitted]." *State v. Richardson*, 289 Kan. 118, 121, 209 P.3d 696 (2009).

"Although voluntary intoxication is not a defense to general intent crimes, a voluntary intoxication defense may be used to negate the intent element of specific intent crimes." *State v. Jones*, 283 Kan. 186, 209, 151 P.3d 22 (2007) (citing *State v. Sterling*, 235 Kan. 526, 528, 680 P.2d 301 [1984]; K.S.A. 21-3208(2) (intoxication); *State v. Ludlow*, 256 Kan. 139, 144-45, 883 P.2d 1144 [1994]). K.S.A. 21-3208(2) states: "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." (Repealed L. 2010, ch. 136, sec. 307.)

Attempt and aggravated indecent liberties are specific intent crimes. K.S.A. 21-3301(a) ("An attempt is any overt act toward the perpetration of a crime done by a person *who intends to commit such crime* but fails in the perpetration thereof" [Emphasis added.]); K.S.A. 21-3504(a)(3)(A) ("with the intent to arouse");

*State v. Gaither*, 283 Kan. 671, 692, 156 P.3d 602 (2007); *State v. Belcher*, 269 Kan. 2, 7, 4 P.3d 1137 (2000).

K.S.A. 21-3511 defines aggravated indecent solicitation of a child as:

"(a) Enticing or soliciting a child under the age of 14 years to commit or to submit to an unlawful sexual act; or (b) inviting, persuading or attempting to persuade a child under the age of 14 years to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child."

Brown was charged under K.S.A. 21-3511(a), and the jury was instructed on the elements of the crime per K.S.A. 21-3511(a). See PIK Crim. 3d 57.13. Only one Kansas case appears to discuss whether aggravated indecent solicitation under K.S.A. 21-3511(a) is a specific intent crime. See *Richardson v. State*, No. 97,995, 2008 WL 1946836, at *3 (Kan. App. 2008) (unpublished decision). There, the Court of Appeals found:

"The specific intent requirement of K.S.A. 21-3511(a) is a requirement that the other person, in this case a child, commit or submit to an unlawful sex act. See *State v. DePriest*, 258 Kan. 596, 604, 907 P.2d 868 (1995); *State v. Johnson*, 283 Kan. 649, 654-55, 156 P.3d 596 (2007). There is no requirement in K.S.A. 21-3511(a) that the offender intend to commit the unlawful sex act with the child, just that the offender intends to solicit or entice the child to do so." 2008 WL 1946836, at *3.

In *State v. DePriest*, when discussing solicitation to commit first-degree murder, this court stated:

"Solicitation is a specific intent crime under Kansas law. A person is not guilty of solicitation unless he or she intentionally commits the actus reus of the offense, viz., he or she commands, encourages, or requests another person to commit a felony with the specific intent that the other commit the crime he or she solicited. The actus reus of the solicitation occurs under Kansas law if a person by words or actions invites, requests, commands, or encourages a second person to commit a crime. The crime is complete when the person communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target crime needs to be performed by either person." 258 Kan. 596, 604, 907 P.2d 868 (1995).

We agree with the reasoning in *Richardson* and find that aggravated indecent solicitation under K.S.A. 21-3511(a) is a specific intent crime.

Having established that Brown's convictions were for specific intent crimes, we must now consider whether Brown presented evidence sufficient for a rational fact-finder to find that Brown's intoxication could negate the intent element of attempted aggravated indecent liberties and aggravated indecent solicitation.

*Insufficient Evidence of Intoxication*

In *State v. Johnson*, 258 Kan. 475, 485-86, 905 P.2d 94 (1995), this court stated:

"Unless evidence is presented that shows intoxication to the extent that a defendant's ability to form the requisite intent was impaired, an instruction on the defense of voluntary intoxication is not required. *State v. Gadelkarim*, 247 Kan. [505,] 508, [802 P.2d 507 (1990)]; see *State v. Smith*, 254 Kan. 144, Syl. ¶ 2, 864 P.2d 709 (1993); *State v. Shehan*, 242 Kan. 127, Syl. ¶ 5, 744 P.2d 824 (1987). The defendant has the burden of showing that he or she was so intoxicated that his or her mental faculties were impaired by the consumption of alcohol or drugs. *State v. Keeler*, 238 Kan. 356, 360, 710 P.2d 1279 (1985)."

Brown presented evidence of his intoxication to the jury through the testimony of J. Williams, Officer Simmons, and L.H. During Williams' cross-examination testimony, Williams stated that she had heard "[t]hrough hearsay" that Brown used drugs and that he always mumbled. She also stated that she was not close enough to him that night to see his eyes.

During direct examination by the State, Officer Simmons testified that, when Brown was in the back of the patrol car, he was mumbling, and "[h]e was definitely intoxicated." On cross-examination by Brown, Officer Simmons testified that Brown was under the influence of alcohol and he could smell the alcohol.

L.H. also testified as to Brown's intoxication. During cross-examination by Brown, L.H. stated that Brown was acting strange all night. She testified that she knew he was drinking that night. During the State's redirect examination, L.H. testified that she knew Brown was drinking because she saw him drink and because he was acting strange.

Based on the evidence in the record, it is not apparent that Brown satisfied his burden to show that he was intoxicated enough so that his mental faculties were impaired. In *Johnson*, the testimony before the jury was that the defendant had consumed beer

and was "drunk." 258 Kan. at 486. The court determined that this was insufficient to show that defendant's consumption of beer impaired his mental faculties so as to render him unable to form the requisite intent. Likewise, here, there is testimony that Brown smelled of alcohol and was mumbling, but nothing to support the argument that his mental faculties were impaired.

### Intoxication Was Not One of Brown's Theories

During opening argument, defense counsel told the jury that the State had to prove that Brown "intentionally did the acts that they have alleged that he did." Defense counsel cautioned the jurors to listen to all the testimony, paying particular attention to any discrepancies. He stated, "We're taking the position that the State just can't prove that he did these acts and that the testimony—or the acts that they're trying to prove do not rise to the level of these acts and there's no proof beyond a reasonable doubt." Defense counsel did not argue during opening remarks that Brown was intoxicated.

During Brown's closing argument, defense counsel pointed out the evidence before the jury that Brown was "acting strange" and may have been intoxicated at the time of the crime. Specifically, defense counsel argued:

"And I contend to you that taking into consideration the totality of the circumstances such as the lighting, . . . or Mr. Brown being intoxicated and mumbling, whether his actions—you know, she's demonstrating something in a lit room at Sunflower House where she says she's blocking and she thinks that, you know— she says, well, that's what I think. That's what I think was happening.

. . . .

"So I just don't believe that there's enough evidence there for you to find that beyond a reasonable doubt that Mr. Brown did acts which could be considered as an overt act towards the perpetration of the crime of indecent liberties. That Mr. Brown did not commit an act of asking or soliciting [L.H.] for the purpose of committing a lewd or—a lewd fondling or touching."

In *State v. Trussell*, 289 Kan. 499, 504, 213 P.3d 1052 (2009), the defendant argued that the trial court should have instructed the jury on self-defense because there was evidence in the record to warrant the instruction, though defendant did not request the instruction at trial. But, this court disagreed, noting that, "while

inconsistent theories of defense are permissible, trial courts should not interfere with a defendant's chosen defense theory by giving an instruction which neither party requested and which may undermine defendant's chosen theory." 289 Kan. at 505 (citing *State v. Sappington*, 285 Kan. 158, 164-65, 169 P.3d 1096 [2007]). The court went on to state "trial courts are not required to provide instructions for every possible theory of defense just because some supporting evidence may be produced at trial, if the defendant has not relied on the particular defense theory." 289 Kan. at 505 (citing *Sappington*, 285 Kan. at 165).

In *State v. Sappington*, likewise, this court determined that it saw "no valid reason to require district courts to instruct juries on every possible theory of defense for which some evidence has been presented when the defendant has not relied upon that defense." 285 Kan. at 165. In that case, the defendant—who did not request an instruction on voluntary intoxication at trial—also argued that the trial court should have instructed the jury on voluntary intoxication. This court acknowledged "that 'it is fundamental to a fair trial that the accused be afforded the opportunity to present his or her theory of defense,' *State v. Humphrey*, 252 Kan. 6, 14, 845 P.2d 592 (1992), and [we] believe that imposing a defense upon a defendant which is arguably inconsistent with the one upon which he completely relies—by providing the jury a defense instruction that neither party requests—is akin to denying the defendant the meaningful opportunity to present his chosen theory of defense." 285 Kan. at 165.

In this case, Brown's theory of the case was that the State had not satisfied its burden of proof beyond a reasonable doubt. Brown's argument focused on the discrepancies between the trial testimony of L.H. and her interview at Sunflower House, arguing that those discrepancies raised doubt. This theory is potentially inconsistent with an intoxication defense. Under a voluntary intoxication theory, Brown would have to argue that, even if the jury does find him guilty, then he was too intoxicated to form the requisite mental state. Under the holdings of *Trussell* and *Sappington*, when a defendant has not asked for an instruction, it is not the job of the trial court to instruct the jury on a defense, particularly given

this court's concern that the defense may be inconsistent with the defendant's chosen theory.

*Deadlocked Jury Instruction*

Brown did not object to Instruction No. 13 when it was given to the jury prior to deliberation; therefore, this court reviews the instruction under a clearly erroneous standard. See *State v. Ellmaker*, 289 Kan. 1132, 1145, 221 P.3d 1105 (2009). Under this standard of review, the court must determine whether "[it is] firmly convinced there is a real possibility the jury would have rendered a different verdict if the error had not occurred." *State v. Salts*, 288 Kan. 263, 265-66, 200 P.3d 464 (2009).

Brown argues that the following language is clearly erroneous:

"Instruction No. 13

"Like all cases, this is an important case. If you fail to reach a decision, the charge is left undecided for the time being. It is then up to the State to decide whether to resubmit the undecided charge to a different jury at a later time. *Another trial would be a burden on both sides.*

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion.

"You may be leisurely in your deliberations as the occasion may require and take all the time you feel necessary." (Emphasis added.)

Brown argues that the emphasized language above ("Another trial would be a burden on both sides.") is reversible error because there is a real possibility that the jury could have rendered a different verdict without that language.

This court has determined that, if the trial court gives the "deadlocked jury" instruction (PIK Crim. 3d 68.12) before the jury retires for deliberations, the instruction is not an error. See *State v. Makthepharak*, 276 Kan. 563, 569, 78 P.3d 412 (2003); *State v. Anthony*, 282 Kan. 201, 216, 145 P.3d 1 (2006).

This court has specifically addressed the language at issue in three recent cases. In *State v. Salts*, this court held that the lan-

guage "[a]nother trial would be a burden on both sides" is error because it is misleading and inaccurate; however, it was not reversible error. 288 Kan. at 266. The *Salts* court found that, under the clearly erroneous standard, there was no real possibility that the jury would have returned a different verdict without the instruction.

In *State v. Ellmaker*, this court acknowledged that the challenged language was error, finding it was misleading and inaccurate. But the court, again, found that there was no real possibility that the jury would have returned a different verdict without the error. 289 Kan. at 1146-47.

Most recently, in *State v. Colston*, 290 Kan. 952, 235 P.3d 1234 (2010), the court confirmed its holding in Salts and Ellmaker, finding that the giving of the *Allen*-type instruction to the jury prior to deliberations was error, but not reversible error. There the court found that the jury rendered its verdict within a few hours, and the jury members were polled and each agreed with the verdict. 290 Kan. at 976.

In Brown's case, the jury returned its verdict exceptionally quick—merely 15 minutes after retiring to the jury room. In addition, the court gave the instruction to the jury prior to deliberations without objection from Brown. The court did not poll the jury in this instance, but when asked if he wanted to poll the jurors, Brown said no.

Thus, as in *Salts*, *Ellmaker*, and *Colston*, the giving of the *Allen*-type instruction was error. But we find that the evidence against Brown was such that the jury would not have rendered a different verdict if the error had not occurred.

### Defendant's Age

Brown presents two arguments revolving around the issue of his age. First, he contends that the district court did not have jurisdiction to sentence him under Jessica's Law because the charging document did not state his age at the time of the offense. Second, Brown argues that the court erred by failing to instruct the jury to find that he was 18 years of age or older at the time of the offense because his age was an essential element of the crime.

Brown's arguments address jurisdiction, statutory interpretation, and constitutional interpretation; therefore, this court's review is unlimited. *State v. Bello*, 289 Kan. 191, 195-96, 211 P.3d 139 (2009) (citing *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 [2006]; *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 [2007]); *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 [2006].

*Charging Document*

Brown argues that the district court did not have jurisdiction to sentence him under K.S.A. 21-4643 because the charging document did not allege in any count that Brown was 18 years of age or older at the time of the offense.

"The Sixth Amendment to the United States Constitution gives an accused the right to 'be informed of the nature and cause of the accusation'; the Kansas Constitution Bill of Rights, § 10 mandates that 'the accused shall be allowed . . . to demand the nature and cause of the accusation against him.' Generally, if a complaint fails to include an essential element of a crime charged, it is 'fatally defective, and the trial court lacks jurisdiction to convict the defendant of the alleged offense.' " *State v. Gonzales*, 289 Kan. 351, 366, 212 P.3d 215 (2009) (citing *State v. Moody*, 282 Kan. 181, 197, 144 P.3d 612 [2006]).

In *Gonzales*, this court dealt with the same issue that Brown raises here. In *Gonzales*, as here, the defendant did not allege that the complaint was defective. Instead he argued that the district court did not have jurisdiction because the State failed to allege a "valid crime" under K.S.A. 21-4643. The *Gonzales* court noted that it had recently rejected defendant's argument in *State v. Gracey*, 288 Kan. 252, 254, 200 P.3d 1275 (2009). 289 Kan. at 368.

When the charging document is challenged for the first time on appeal, "the defendant must show that the alleged defect either: (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial." *Gracey*, 288 Kan. at 254; see *State v. Hall*, 246 Kan. 728, 761, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003); see also *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2006)

(applying the post-*Hall* analysis); *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004) (same).

In *Gonzales*, this court held that the defendant was adequately informed of both the crime charged and the penalty. This court found that "the complaint against Gonzales listed his date of birth, stated the charge was for an off-grid person felony, and otherwise specifically listed the elements of aggravated indecent liberties with a child under the age of 14." 289 Kan. at 369. Further, the court found that Gonzales did not "contend that the preparation of his defense or his rights to a fair trial were impaired. Nor ha[d] Gonzales shown that his conviction for aggravated indecent liberties with a child under the age of 14 affected any subsequent prosecution." 289 Kan. at 369.

Applying the findings from *Gonzales* to Brown's case, the facts are similar. In the initial information charging Brown with aggravated indecent liberties, the charging document included within the count that Brown was over the age of 18. But neither the first amended nor the second amended information contained facts pertaining to Brown's age. In addition, the initial information and both subsequent amended informations stated that the charge was for an off-grid person felony and otherwise listed the elements of attempted aggravated indecent liberties with a child. Brown has not argued that his preparation of his defense was impaired, nor has he shown how his conviction has affected any subsequent prosecution. As such, we affirm his conviction.

### Jury Instructions

Brown argues that this court should reverse his convictions for attempted aggravated indecent liberties because the trial court failed to instruct the jury to determine that Brown was over the age of 18 beyond a reasonable doubt. Several recent cases have dealt with this same issue and similar set of facts. See *Colston*, 290 Kan. 952; *Reyna*, 290 Kan. 666; *State v. Morningstar*, 289 Kan. 488, 213 P.3d 1045 (2009); *Gonzales*, 289 Kan. 351; *Bello*, 289 Kan. 191.

Attempted aggravated indecent liberties with a child is an off-grid person felony under K.S.A. 21-3504(c) and K.S.A. 22-

4643(a)(1)(G). Brown's second charge—aggravated indecent solic-itation—is a severity level 5 person felony under K.S.A. 21-3511(b), and it is not one of the Jessica's Law felonies listed in K.S.A. 21-4643, requiring a mandatory term of 25 or 40 years in prison.

Brown is correct in his argument that, based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), defendant's age at the time of the offense is an element of the crime if the State seeks to convict the defendant of the more se-rious, off-grid level of the offense. *Gonzales*, 289 Kan. at 371; *Bello*, 289 Kan. at 199-200. In *Bello, Gonzales*, and *Morningstar*, this court determined that the failure to instruct the jury to make a finding on defendant's age was error, and the result of that error was to vacate the sentence and remand for resentencing under the Kansas Sentencing Guidelines as a grid offense. *Morningstar*, 289 Kan. at 495; *Gonzales*, 289 Kan. at 372; *Bello*, 289 Kan. at 200.

But in the more recent *State v. Colston*, this court held that "[w]hen a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by over-whelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Colston*, 290 Kan. at 975 (citing *State v. Reyna*, 290 Kan. 666, Syl. ¶ 10, 234 P.3d 761 [2010]). In *Reyna*, the court determined that "[c]haracterizing the omission of an element from the instructions to the jury [as an *Apprendi*-type error, *i.e.*,] as judicial factfinding of the omitted element, when that element en-hances the maximum applicable sentence, does not change the harmless error analysis." 290 Kan. 666, Syl. ¶ 11.

In *Reyna*, the defendant testified at trial and stated his own age. 290 Kan. at 679. In *Colston*, sufficient evidence of Colston's age was presented through testimony of his son, who stated he was 29 years old and defendant's daughter was 31. In addition, Colston's girlfriend testified that she was 31 years old and Colston was about 20 years older than her. 290 Kan. at 974. In both cases, this court determined that there was sufficient evidence in the record estab-lishing the defendant's age such that any instructional error was harmless.

In *Bello, Gonzales*, and *Morningstar*, the State failed to present evidence of the defendant's age at trial. 289 Kan. at 491-92; 289 Kan. at 371; 289 Kan. at 199.

In Brown's case, there was little to no evidence of Brown's age presented to the jury. Brown did not testify in his own defense; therefore, unlike *Reyna*, he did not state his age or date of birth before the jury. The only evidence presented to the jurors from which they could infer Brown's approximate age was testimony from Nakisha. Nakisha stated that she was 27 years old at the time of trial. She testified that her mother, Denise Moore, was married to Brown at one time, but Brown was not Nakisha's father. He was, however, her sisters' (Janelle and Tamara) father. No evidence was presented as to the ages of Nakisha's sisters.

We find that, under *Bello, Gonzales*, and *Morningstar*, there was insufficient evidence of Brown's age for this court to find harmless error in this case. Thus, we vacate Brown's sentence and remand to the district court for resentencing on the sentencing grid.

Because we are remanding Brown's case on the age issue, we decline to address his remaining argument regarding cruel and unusual punishment.

Sentence vacated and remanded for resentencing.

TIMOTHY E. BRAZIL, District Judge, assigned.