NOT DESIGNATED FOR PUBLICATION

No. 120,460

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KERRY TYLER TILGHMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed December 6, 2019. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM: Kerry Tyler Tilghman appeals after a jury convicted him of attempted murder in the second degree and criminal possession of a firearm. On appeal, Tilghman raises four issues. He contends that the district court erred by admitting into evidence a statement he made while in jail awaiting trial, by admitting evidence relating to the commission of other crimes, and by denying a requested jury instruction regarding voluntary intoxication. Tilghman also contends that there was cumulative error. Based on our review of the record on appeal, we do not find reversible error. Thus, we affirm Tilghman's convictions.

1

On May 2, 2017, Tilghman and a friend—Mercedes Garza—decided to hang out at Garza's apartment. Before arriving at Garza's apartment, the pair went to a liquor store, where Tilghman bought a 20-pack of Budweiser and a small bottle of Crown apple liquor. After arriving at Garza's apartment, Tilghman drank a beer and "a few" shots of the liquor. As the evening continued, Tilghman began repeatedly asking Garza to have sex with him. When she declined, Tilghman shot Garza with his handgun—striking her in the forehead.

Immediately following the shooting, Garza tried to stop the bleeding, ran to find her children, and tried to call for help on her cellphone. However, Tilghman prevented Garza from using her phone by taking it away from her. He then pulled her by the hair to prevent Garza from reaching his cellphone. After twice being told by Garza to leave, Tilghman left with his handgun but left his cellphone behind in Garza's apartment. Approximately 30 to 40 minutes later, Tilghman tried to return to Garza's apartment and was apprehended outside the building while attempting to climb over a backyard fence.

Noting that Tilghman's speech was slurred following his arrest, Detective Heron Santana decided not to take a statement from Tilghman at that time. Garza also told Officer Rylan J. Douglas that she believed Tilghman was "under the influence of alcohol" at the time of the shooting. As for Garza, she was taken to a hospital for treatment for her wound and she remained there for 24 hours before being released.

While incarcerated awaiting trial, Tilghman was held in jail with Garza's boyfriend Javier Porraz. At trial, Porraz testified that about a month after the shooting, Tilghman told him to pass a message to Garza. Specifically, Porraz was instructed to tell Garza, "to not go to court if [you] know what's best for [you]." Porraz believed this message to be a threat to his girlfriend if she testified against Tilghman at trial.

On April 22, 2018, the district court commenced a two-day jury trial. During the trial, the State called six witnesses and offered 29 exhibits that were admitted into evidence. Tilghman called two witnesses and offered one exhibit that was admitted into evidence. After deliberation, the jury convicted Tilghman of attempted murder in the second degree, aggravated battery, and criminal possession of a firearm. Subsequently, the State voluntarily dismissed the aggravated battery conviction—which had been presented to the jury as an alternative charge to attempted murder—and the district court sentenced Tilghman to 102 months in prison.

## ANALYSIS

On appeal, Tilghman raises four issues. First, Tilghman contends that the district court erred in admitting his statement to Garza's boyfriend while in jail awaiting trial. Second, Tilghman contends that the district court erred in failing to adequately limit or caution the jury about its consideration of evidence of other crimes. Third, Tilghman contends that the district court improperly denied his request for a voluntary intoxication instruction. Fourth, Tilghman contends that there was cumulative error.

*Admission of Statement to Garza's Boyfriend*

Tilghman contends that the statement he made to Garza's boyfriend in jail to tell her "to not go to court" was improperly admitted into evidence. He suggests that the statement was not relevant and that its admission was unduly prejudicial. In response, the State argues that admission of Tilghman's statement was proper because it was both relevant and material to establish intent as well as consciousness of guilt.

As a general rule, all relevant evidence is admissible under K.S.A. 60-407(f). Relevant evidence is defined as evidence having "any tendency in reason to prove any material fact." K.S.A. 60-401(b). To be relevant, evidence must be both material and

3

probative. *State v. Page*, 303 Kan. 548, 550-51, 363 P.3d 391 (2015). Evidence is material when the fact it supports is at issue and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). Moreover, evidence is probative if it has any tendency to prove any material fact. *State v. Dean*, 310 Kan. ___, ___, 450 P.3d 819, 829 (2019).

Our standard of review regarding whether evidence is material is de novo. On the other hand, we review whether evidence is probative under an abuse of discretion standard. *McCormick*, 305 Kan. at 47. Even if evidence is otherwise admissible, a district court may—in its discretion—exclude such evidence under K.S.A. 60-445 if the evidence's probative value is outweighed by undue prejudice. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). Nevertheless, "Kansas law favors the admission of otherwise relevant evidence, and the exclusion of relevant evidence is an extraordinary remedy that should be used sparingly." *State v. Seacat*, 303 Kan. 622, 640, 366 P.3d 208 (2016).

Kansas courts have also concluded on several occasions "that evidence demonstrating a defendant's consciousness of guilt can be material to several issues in a criminal case, including intent, identity, plan, or other matters." *State v. Huddleston*, 298 Kan. 941, 958-61, 318 P.3d 140 (2014); see also *State v. Wilkins*, 269 Kan. 256, 267, 7 P.3d 252 (2000) ("'Because intent "is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence."'"); *State v. Lippard*, No. 114,588, 2017 WL 3837700, at *5 (Kan. App. 2017) (unpublished opinion)(Statements made in call from jail encouraging witness not to testify were relevant as to consciousness of guilt and were not unduly prejudicial).

In *Huddleston*, a defendant sent two letters from jail in which he advised one codefendant how to testify against another codefendant in a pending criminal trial. The

4

Kansas Supreme Court agreed with the district court that the letters were both material and probative—and thus relevant—to the defendant's consciousness of guilt. 298 Kan. at 960-61. In *Huddleston*, our Supreme Court also found that the district court did not abuse its discretion in finding that the probative value of the letters outweighed the prejudicial effect of admitting the letters into evidence. 298 Kan. at 963-64.

Based on our review of the record, we find that Tilghman's statement to Garza's boyfriend was relevant in showing his consciousness of guilt. In particular, the testimony regarding the statement—if believed—showed that Tilghman was trying to discourage Garza from testifying against him at trial. In other words, Tilghman's statement could reasonably be viewed as an attempt to threaten Garza because he was aware the only way to avoid conviction was to convince her not to testify. Although the jury was free to give the evidence whatever weight it deemed appropriate, we conclude that the statement was relevant.

Tilghman also argues that admission of the statement was highly prejudicial. However, in light of the significant charges filed against Tilghman, the fact that he spent at least some time in jail after being arrested should not come as a surprise to the jury. Likewise, reasonable people could agree that the probative value of Tilghman's statement to Garza's boyfriend was an attempt to dissuade Garza from testifying in recognition of his guilt. Based on our review of the record, we find that it was reasonable for the district court to determine that the probative value of the statement outweighed its prejudicial impact. Accordingly, we conclude that the district court did not abuse its discretion in admitting the statement into evidence.

*Jury Instructions Given by District Court*

Tilghman also contends that the district court's instruction regarding evidence of prior crimes was inadequate. In particular, Tilghman argues that the instruction given by

5

the district court was improper because it did not specify that the evidence was admitted only to establish elements of the possession of a firearm by a felony charge filed against him. In response, the State argues that the jury was properly instructed. In the alternative, the State argues that even if there was error, it does not rise to the level of clear error.

When analyzing a jury instruction issue, we follow a three-step process. First, we determine whether the issue is preserved for review. Second, we determine whether error occurred. Third, we determine whether any error requires reversal or was harmless. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Whether a party has preserved a jury instruction issue affects our inquiry at the third step. 307 Kan. at 317.

K.S.A. 2018 Supp. 22-3414(3) provides that "[n]o party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." Here, Tilghman did not request that the district court give a limiting instruction regarding his 2015 conviction at trial so the clearly erroneous standard applies. Accordingly, we are not to reverse a district court unless (1) we find that an error occurred and (2) we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015). Furthermore, the party claiming a clear error—in this case Tilghman—has the burden to demonstrate the necessary prejudice. See *McLinn*, 307 Kan. at 318.

When determining whether an instruction was clearly erroneous, we first determine whether any error occurred by determining whether the instruction was factually and legally appropriate. *State v. Sisson*, 302 Kan. 123, 129, 351 P.3d 1235 (2015). An instruction is legally appropriate when it fairly and appropriately states the applicable law. Moreover, an instruction is factually appropriate when sufficient evidence supports a factual basis for the instruction. Under this analysis, we apply an unlimited standard of review. *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

6

Here, the parties entered into a stipulation about Tilghman's 2015 felony conviction and the district court appropriately considered the stipulation for the purpose of establishing two of the elements of the charge of criminal possession of a firearm by a felony. In particular, Jury Instruction No. 12 instructed the jury as to the elements the State must prove in order to convict Tilghman of criminal possession of a firearm—including that he "has been convicted of a felony" and that he "was found to be in possession of a firearm at the time of the prior crime." In turn, Instruction No. 13 provided that the stipulation—which was marked as State's Exhibit 3—could be considered by the jury as a basis for considering these two elements of the crime. In addition, Instruction No. 13 advised the jury that the "other elements of Instruction No. 12 must be proven beyond a reasonable doubt."

In *State v. Banks*, 260 Kan. 918, 928, 927 P.2d 456 (1996), our Supreme Court considered a similar issue. The defendant in *Banks* alleged that the district court committed reversible error when it failed to give an instruction that evidence of a prior conviction was only to be used for the limited purpose of establishing an element of the crime of unlawful possession of a firearm even though he had not requested such an instruction. In rejecting the defendant's argument, the *Banks* court relied on *State v. Knowles*, 209 Kan. 676, Syl. ¶ 3, 498 P.2d 40 (1972), which held: "Where proof of a previous conviction is an essential element of a crime charged, failure to give an instruction limiting the purpose for which such conviction may be considered is not reversible error in the absence of a request." See *State v. Coleman*, No. 107,117, 2013 WL 1859194, at *2-5 (Kan. App. 2013) (unpublished opinion).

Here, as in *Banks*, Tilghman did not request a limiting instruction. When reviewing the jury instructions in context, the jurors would have known that the stipulation was admitted solely for the purposes of establishing necessary elements of the charge of criminal possession of a firearm by a convicted felon. Likewise, the jury

7

instructions never state that the stipulation agreed to by the parties had any purpose other than to prove the elements of the criminal possession of a firearm charge. Accordingly, we conclude that it was not clear error for the district court to fail to give an additional limiting instruction regarding the use of the parties' stipulation.

Tilghman also argues that Instruction No. 15—which was the limiting instruction for the admission of his statement to Garza's boyfriend—to be erroneous. Again, Tilghman did not object to this instruction at trial so we review this instruction under a clearly erroneous standard. To the extent that Tilghman's challenge to the instruction is an extension of his argument that the statement made to Garza's boyfriend is irrelevant, we have discussed that issue and we reiterate that we find no error in the district court's admission of the statement into evidence.

Even so, we note that Instruction No. 15—when viewed in isolation—fails to specify whether it is referring to the alleged threat Tilghman made from the jail, to the prior felony that led to the firearm charge, or to both. As such, we find that the instruction could have potentially been confusing to the jury. However, when viewed in context with the other instructions, we do not find Instruction No. 15 to be clearly erroneous. In particular, we are not firmly convinced that the jury would have reached a different verdict if the alleged instruction error had not occurred.

*Request for Voluntary Intoxication Instruction*

Next, Tilghman asserts that the district court improperly denied his request for a voluntary intoxication instruction. Unfortunately, we cannot find the proffered instruction in the record. However, it appears that Tilghman asked the district court to give an instruction similar to Pattern Instruction of Kansas PIK Crim. 4th 52.060, which provides that evidence of voluntary intoxication can be considered by a jury in determining whether the defendant's mental faculties were impaired to the extent that he or she was

8

incapable of forming the necessary intent to commit one or more elements of a specific intent crime.

Because Tilghman requested an involuntary intoxication instruction at trial, we must determine whether the requested instruction was legally and factually appropriate. If so, we must also determine whether the failure to give the requested instruction was harmless. *State v. Solis*, 305 Kan. 55, 64, 378 P.3d 532 (2016). At trial, the district court found a voluntary intoxication instruction to be legally appropriate as to the charge of attempted murder in the second degree and the State does not challenge this finding. Hence, we turn to the question of whether the requested instruction was factually appropriate.

In cases involving a specific intent crime, a voluntary intoxication instruction is appropriate when the evidence—viewed in the light most favorable to the defendant—establishes that the defendant was intoxicated to the extent that his or her ability to form the requisite intent was impaired. *State v. Hilt*, 299 Kan. 176, 193, 322 P.3d 367 (2014). Impairment will not, however, be inferred based on evidence of consumption alone. *State v. Reed*, 302 Kan. 390, 400, 352 P.3d 1043 (2015). Instead, to warrant an involuntary intoxication instruction, the evidence must show that the defendant was "'so impaired that he or she has lost the ability to reason, to plan, to recall, or to exercise motor skills as a result of voluntary intoxication.'" 302 Kan. at 400.

In other words, the facts warranting a voluntary intoxication instruction must clearly demonstrate significant impairment. For example, in *State v. Brown*, 291 Kan. 646, 656-57, 244 P.3d 267 (2011), evidence that a defendant consumed beer, smelled of alcohol, and mumbled has been found to be insufficient to establish that his faculties were significantly impaired to the point that he was incapable to form the requisite intent to the charges of attempted aggravated indecent liberties with a child and aggravated indecent solicitation of a child, both specific intent crimes. *Brown*, 291 Kan. at 654-57.

9

Similarly, evidence that a defendant consumed alcohol to the point to be considered "drunk" by witnesses has been found to be insufficient—without more—to establish significant impairment. See *State v. Dominguez*, 299 Kan. 567, 592, 328 P.3d 1094 (2014); *State v. Hernandez*, 292 Kan. 598, 607, 257 P.3d 767 (2011); and *State v. Johnson*, 258 Kan. 475, 486, 905 P.2d 94 (1995), *overruled on other grounds by State v. Everett*, 296 Kan. 1039, 297 P.3d 292 (2013).

Here, Tilghman argues that he was entitled to an involuntary intoxication instruction because there is evidence in the record to show that he had drank a beer and "a few" shots of liquor shortly before shooting Garza. In addition, Tilghman points to Detective Santana's decision to wait until the following day to take his statement because he was "too intoxicated" following his arrest. Further, Tilghman points to Garza's statement to Officer Douglas that Tilghman was "under the influence of alcohol" when the shooting occurred.

A review of the record reveals that Detective Santana decided not to question Tilghman on his arrest based on superficial indicators that he might be intoxicated—particularly slurred speech and an unsteady gait. Detective Santana's testimony on this point indicates he simply chose not to interview Tilghman out of an abundance of caution. This was not a situation in which Detective Santana attempted to interview Tilghman and found him to be incoherent or otherwise not in command of his faculties. Thus, the detective's choice to defer the questioning tells us little about whether Tilghman was so intoxicated that he could not form the intent to kill necessary to support the conviction for attempted second-degree murder.

In determining that the giving of a voluntary intoxication instruction in this case was not factually appropriate, the district court found:

"[A]ll the testimony in this case goes to either consumption or it goes to physical appearances of the defendant. There's been no testimony in this case regarding his mental faculties; that is, anything about his inability to recall that night, anything about his inability to remember."

We agree with the district court's analysis of this issue. Although there is indeed evidence in the record that Tilghman consumed alcohol before shooting Garza, no evidence was presented at trial to establish that his mental faculties were impaired to the extent that he was incapable of forming the necessary intent to commit attempted murder in the second degree. Further, evidence of Tilghman's behavior immediately following the shooting belies his claim that he was "so impaired that he . . . lost the ability to reason, to plan, to recall, or to exercise motor skills as a result of voluntary intoxication." See *Reed*, 302 Kan. at 400.

Immediately after shooting Garza in the head, Tilghman took action to prevent her from calling for help. Specifically, he took her cellphone away from her and forcefully prevented her from reaching his phone. In addition, the evidence shows that Tilghman retained the ability to converse with Garza immediately after the shooting. As a result, the evidence demonstrates that Tilghman retained the ability to reason, plan, and exercise motor skills immediately following the shooting despite his alcohol consumption.

In sum, a review of the record in the light most favorable to Tilghman reveals little more than mere consumption of alcohol. Even if we assume that Tilghman was under the influence of alcohol at the time of the shooting, there is nothing in the record to suggest that he was impaired to the extent that he was incapable of forming the necessary intent to commit the crime of attempted second-degree murder. Accordingly, we conclude that the district court did not err in denying the submission of a voluntary intoxication instruction to the jury.

11

*Cumulative Error*

Finally, Tilghman contends that the cumulative effects of these errors resulted in an unfair trial. However, where there is no error—or only a single error—there cannot be reversal on the grounds of cumulative error. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479, 496 (2019). Based on our review of the record, we are convinced that Tilghman received a fair trial. Thus, Tilghman's cumulative error argument also fails.

Affirmed.