NOT DESIGNATED FOR PUBLICATION

No. 120,577

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONALD C. KNITTLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed April 24, 2020.
Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and SCHROEDER, JJ.

PER CURIAM: Ronald C. Knittle was convicted by a jury of five offenses
stemming from the aggravated kidnapping and attempted rape of his victim, L.M. On
appeal, he argues there was insufficient evidence to support his convictions for
aggravated kidnapping and attempted rape. Knittle does not challenge his convictions for
the three remaining charges. Upon review of the record, we are convinced the evidence
was sufficient to support Knittle's convictions for aggravated kidnapping and attempted
rape. We affirm.

1

Knittle's victim, L.M., was jogging on a path along the Arkansas River in Wichita when she noticed Knittle by the river. L.M. passed Knittle and continued jogging down the path. She eventually turned around and went back the same way she came. As L.M. approached, Knittle moved into her path and began walking toward her. L.M. stopped to adjust her sock and shoe, hoping Knittle would pass by, but he did not.

Knittle stopped near L.M. and asked her what year it was. L.M. laughed and attempted to resume her run, but Knittle repeatedly blocked her. L.M. began to panic; she yelled for help, waived her arms trying to draw someone's attention, and told Knittle she was going to call the police. Knittle told L.M. to be quiet and pushed her arms down. He grabbed her by the hair and repeatedly punched her in the face. L.M. lost her balance and fell into a grassy area next to the jogging path. Knittle fell next to L.M. and tried to climb on top of her. L.M. tried to fight Knittle off by repeatedly kicking him in the legs. However, Knittle continued his attack, tugging on L.M.'s shirt and partially pulling down her pants. L.M. continued to struggle and scream at which point Knittle threatened to beat her to death. L.M. was able to break free from Knittle and started to run away but lost her footing and fell. As L.M. attempted to flee, Knittle stepped on her cell phone and glasses to prevent her from taking them.

Across the river, Jeffrey Weeks, a city maintenance employee, was mowing the grass and saw the attack. Weeks began honking the horn on his tractor to draw attention and scare Knittle away, then Weeks called 911. Nevertheless, Knittle pulled down his pants, got on the ground next to L.M., pulled off her shoes and socks, and pulled down her pants. Knittle was eventually distracted by Weeks' honking, which allowed L.M. to escape and run to the nearby street. She flagged down a passing driver, Michael Eddington, immediately got into his vehicle for safety, and told Eddington that Knittle

tried to rape her. Eddington saw Knittle standing nearby and used his cell phone to take a picture of him.

Wichita Police Officer Noland Keahey arrived at the scene in response to Weeks' call. Keahey stopped near Eddington's vehicle and saw Knittle take off running through some nearby trees. Knittle grabbed a bicycle that was propped against a nearby bench and began riding down the sidewalk. Keahey got into his patrol car, drove over the curb, and began pursuing Knittle down the bike path. Keahey caught up with Knittle, exited his patrol car, drew his weapon, and ordered Knittle to get down on the ground. Knittle refused to comply with Keahey's command. Several additional officers arrived, and Knittle continued to struggle. During the struggle, Knittle huffed chemical fumes from a sock he was carrying. He also asked Keahey what year it was and told Keahey he was from the future. Ultimately, Keahey used his taser to restrain Knittle and complete his arrest.

After Knittle was arrested, officers found a one-gallon can of solvent, a sock saturated with solvent, a pair of eyeglasses, and two cell phones near the bicycle Knittle had been riding. Knittle was charged with attempted rape, criminal threat, interference with a law enforcement officer, aggravated battery, theft, and aggravated kidnapping. Before trial, the aggravated battery charge was dismissed by the State. The jury convicted Knittle of the five remaining offenses, and the district court sentenced him to a term of 307 months' imprisonment. Additional facts are set forth as necessary herein.

ANALYSIS

On appeal, Knittle claims there was insufficient evidence to support his two convictions for attempted rape and aggravated kidnapping. Specifically, Knittle argues that due to his voluntary intoxication he could not have formed the specific intent required to commit either crime. Knittle does not challenge the sufficiency of the

evidence underlying his other convictions; thus, he has waived and abandoned any such argument. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed deemed waived or abandoned).

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Here, the jury was instructed on voluntary intoxication as a defense to the charges of aggravated kidnapping and attempted rape. "[W]hen a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." K.S.A. 2019 Supp. 21-5205(b). "This language establishes that voluntary intoxication is an available defense when a defining mental state is a stand-alone element separate and distinct from the actus reus of the crime." *State v. Murrin*, 309 Kan. 385, 397, 435 P.3d 1126 (2019). Aggravated kidnapping is a specific intent crime. *State v. Mattox*, 305 Kan. 1015, 1025, 390 P.3d 514 (2017). Accordingly, voluntary intoxication may be used to negate the specific intent element of aggravated kidnapping. See *State v. Hilt*, 299 Kan. 176, 192-93, 322 P.3d 367 (2014).

An attempt crime requires specific intent to commit the attempted crime. See *State v. Robinson*, 256 Kan. 133, 137, 883 P.2d 764 (1994). Because attempted crimes require specific intent, voluntary intoxication may be used as a defense to the specific intent element. *State v. Brown*, 291 Kan. 646, 654, 244 P.3d 267 (2011).

Knittle argues no reasonable jury could have found he had the ability to form the specific intent to commit aggravated kidnapping and attempted rape. In support, he points

4

to the fact he asked L.M. and Keahey what year it was and claimed to be from the future. He also claims he had no ability to control or the wherewithal to conceal his illegal behavior. Knittle points to the fact he inhaled vapors from the sock in Keahey's presence and attacked L.M. in a public place during the middle of the day in view of Weeks. He further cites to his trial counsel's argument Knittle was "'blown out of his mind.'"

However, Knittle cites no evidence in the record regarding the extent to which sniffing chemical solvents can potentially render someone impaired. Effectively, he assumes—and asks us to do the same—whatever solvent he had been sniffing could and did render him too intoxicated to understand the nature of his conduct and form the specific intent necessary to commit aggravated kidnapping and attempted rape. But Knittle offers no support in the record indicating the solvent—at times referred to as acetone or mineral spirits—could cause him to be so intoxicated he could not form the intent to commit the crimes of aggravated kidnapping and attempted rape.

In any event, the State points out considerable evidence showing Knittle was aware of the nature of his conduct and had the capacity to form the specific intent required to commit the offenses. After L.M. resisted Knittle, he struck her in the face and threatened to beat her to death if she continued yelling and calling for help. Knittle also chased L.M. as she ran away and fled the scene when he saw Keahey arrive. After his arrest, Knittle was able to provide information to another officer and even assisted her with the proper spelling of his name. Based on this evidence, a reasonable jury could conclude Knittle had the requisite capacity and mental faculties to form the specific intent to commit the offenses of aggravated kidnapping and attempted rape.

The mere fact Knittle may have inhaled chemical fumes does not show he was too intoxicated to form specific intent. Rather, "[t]here must be some evidence of intoxication upon which a jury might find that a defendant's mental faculties were impaired to the extent that he was incapable of forming the necessary specific intent to commit the

5

crime." *State v. Shehan*, 242 Kan. 127, 131-32, 744 P.2d 824 (1987). Viewed in a light most favorable to the State, the evidence shows Knittle was aware of his actions and had the capacity to form the requisite intent, regardless of his strange comments to L.M. and Keahey. To conclude otherwise would require us to reweigh evidence, which we cannot do. See *Chandler*, 307 Kan. at 668. Knittle's convictions for aggravated kidnapping and attempted rape are affirmed.

Affirmed.