No. 101,809

STATE OF KANSAS, *Appellee*, v. ANTHONY S. KIDD, *Appellant*.

(265 P.3d 1165)

Opinion filed December 2, 2011.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant, and *Anthony S. Kidd*, appellant, was on a supplemental pro se brief.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Anthony Kidd appeals his convictions of first-degree murder, aggravated assault, criminal discharge of a firearm at an occupied dwelling, and aggravated battery. Kidd seeks reversal of his convictions, arguing the trial court erred in refusing to instruct the jury on the defense of voluntary intoxication; the prosecutor committed misconduct by violating his duty to inform witnesses about an order in limine; and cumulative error deprived him of a fair trial. Kidd also contends the district court violated his constitutional rights at sentencing. Acting pro se, Kidd challenges the sufficiency of the evidence, contends his trial counsel was ineffective, and argues the trial court denied him his right to a speedy trial.

We conclude the district court did not err in failing to give the voluntary intoxication instruction, but the prosecutor did violate his duty to inform the State's witnesses that an order in limine prohibited reference to Kidd's prior crimes. However, we conclude beyond a reasonable doubt that this error did not affect the outcome of the trial. We reject Kidd's cumulative error claim, his sentencing argument, and his pro se claims.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2007, Ladria Gulley returned home from work at approximately 5:30 p.m. to find her husband, Tynus Gulley, Sr., working outside the house. Later that evening, Ladria's cousin, Les Labroi, stopped by the Gulleys' home and found Tynus mixing cement outside and Kidd "just standing there, drinking."

When Labroi asked why the two men were working in the dark, Kidd pulled out a "little short shotgun" and said "ain't nobody coming back here. I'm a gator, you know. . . my eyes come up out of the water." Labroi characterized Kidd's comments as "just crazy talk, really." At trial, when the prosecutor questioned Labroi regarding Kidd's level of intoxication, Labroi testified Kidd "was probably buzzed a little bit, but he wasn't—he wasn't real drunk."

Labroi testified he could tell that Kidd was drinking by the things he was saying, including his several references to himself "as a vicious animal or something like that."

After Labroi left, Tynus and Kidd came inside and played video games. Ladria testified Kidd drank brandy and made "snide little remarks." At some point Kidd made a comment about Tynus' brother, and Tynus asked Kidd to leave. Ladria intervened, and a physical altercation ensued between Kidd, Tynus, and Ladria.

Ladria testified at trial that she assumed Kidd may have been drunk because he drank from a bottle of alcohol and talked a lot. However, Ladria agreed that Kidd's intoxication did not prevent him from communicating, fighting, and running out of the house.

Eventually, Kidd left the house, and a few minutes later, Ladria heard a gunshot and the sound of glass shattering in the kitchen. Ladria and Tynus ran out of the house and onto the porch, where Kidd stood in front of the house. Ladria saw a flash and heard a gunshot before closing her eyes. When she opened her eyes, she saw Tynus fall and realized he had been shot. Kidd took off running. Ladria ran to the neighbor's house and asked the neighbor to call 911. Tynus later died from the gunshot wounds.

Several hours later, at approximately 1 a.m., May 8, 2007, Keith Johnson was walking on a residential street in a neighborhood near the Gulleys' home and stopped in front of an old garage to roll a cigarette. As he did so, he heard a loud blast. Johnson realized he had been shot when he felt a burning sensation in his left hand. He looked up and saw Kidd walking toward him with a shotgun. Johnson apologized to Kidd, attempting to plead for his life. Kidd told Johnson to shut up and then began to run down the street. Johnson ran in the opposite direction and called 911 from a pay phone. Ultimately, Johnson's injuries necessitated amputation of four fingers on his left hand.

The State charged Kidd with one count of first-degree premeditated murder of Tynus Gulley, one count of aggravated assault of Ladria Gulley, one count of criminal discharge of a firearm at an occupied dwelling, and one count of aggravated battery of Keith Johnson.

In addition to the testimony discussed above, the evidence at trial established that sometime late on May 7, 2007, or very early on May 8, 2007, Kidd checked into Room 2 of the Bellboy Motel. Several months later, the same employee who checked Kidd into Room 2 was cleaning that room when he moved the dresser and found a shotgun.

At trial, Labroi identified the gun found in the motel as the gun Kidd pulled out at the Gulleys' home on May 7, 2007. A firearm/tool mark examiner compared the breech face markings on the shotgun shells found at both crime scenes with a shell fired from Kidd's shotgun and concluded the shotgun shells found at both crime scenes were fired from Kidd's shotgun.

The jury found Kidd guilty on all four counts. The district court sentenced Kidd to a life sentence with a minimum of 25 years for the murder conviction and a consecutive term of 52 months for the three remaining counts.

Kidd appeals his convictions and sentencing.

## ANALYSIS

### Voluntary Intoxication Instruction

At trial, Kidd requested a voluntary intoxication defense instruction, but the district court found the evidence insufficient to support the defense and denied Kidd's request. On appeal, Kidd argues the instruction should have been given because first-degree murder is a specific intent crime, and the evidence was sufficient to establish that he was intoxicated when he committed the crimes and could not have formed the requisite intent.

The State argues the district court appropriately declined to issue a voluntary intoxication instruction because there was no evidence demonstrating that Kidd was so intoxicated that he was unable to form the requisite intent necessary to commit murder.

While voluntary intoxication is not a defense to general intent crimes, such a defense may be used to negate the intent element of a specific intent crime. *State v. Brown*, 291 Kan. 646, 654, 244 P.3d 267 (2011); see K.S.A. 21-3208(2). Here, Kidd challenges his conviction of first-degree murder, a specific intent crime. See *State*

*v. Ellmaker*, 289 Kan. 1132, 1142, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010).

However, Kidd was not entitled to an instruction on voluntary intoxication unless the evidence, viewed in the light most favorable to Kidd, was sufficient to permit a rational factfinder to conclude Kidd was intoxicated to the extent that his ability to form the requisite intent was impaired. See *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009); *State v. Brown*, 258 Kan. 374, 386-87, 904 P.2d 985 (1995). As we recently noted in *State v. Hernandez*, 292 Kan. 598, 607, 257 P.3d 767 (2011), evidence that a defendant has consumed alcohol or drugs, or that a defendant is " 'high' " or " 'intoxicated,' " does not permit an inference that the defendant was so impaired that he or she was unable to form the requisite intent.

In *Hernandez*, as in this case, the defendant requested a jury instruction on the defense of voluntary intoxication. The evidence showed that Hernandez had gotten high, consumed alcohol, used marijuana, and possibly used cocaine on the day prior to the murder, and trial witnesses described Hernandez as " 'high' " or " 'intoxicated' " prior to the crime. Nevertheless, witnesses also indicated Hernandez knew what was going on and what he was doing. Further, Hernandez provided a detailed recollection of the events on the night of the offense, demonstrating that his mental faculties were intact.

We concluded in *Hernandez* that the evidence, when viewed in the light most favorable to the defendant, was insufficient to permit a rational factfinder to conclude Hernandez was so intoxicated that he was unable to form the specific intent necessary for the crimes charged. 292 Kan. at 607; see also *Brown*, 291 Kan. at 656-57 (evidence that on the evening of the crime the defendant consumed alcohol, acted strange, and was intoxicated was insufficient to show defendant was so intoxicated he was unable to form the requisite intent); *State v. Johnson*, 258 Kan. 475, 486, 905 P.2d 94 (1995) (despite evidence that defendant had consumed alcohol and was " 'drunk,' " court found no evidence that defendant's consumption of alcohol impaired his mental faculties so as to render him unable to form the requisite intent).

Kidd suggests the facts of this case merit the same resolution as those in *State v. Moore*, 287 Kan. 121, 194 P.3d 18 (2008). There, we found circumstantial evidence adequate to support a requested voluntary intoxication instruction where the evidence showed that

"Moore's residence was littered with empty and full beer cans and liquor bottles; that Moore had a history of alcohol and drug abuse and his behavior became mean, violent, and paranoid when he was under the influence; and that Moore unquestionably behaved in a mean, violent, and paranoid manner on the night of the crimes." 287 Kan. at 133-34.

However, we found the error harmless given the weight of evidence against Moore. 287 Kan. at 134.

Unlike *Moore*, the record in this case lacks circumstantial evidence linking defendant's consumption of alcohol and possible impairment to the level of impairment necessary to support a voluntary intoxication instruction. Rather, the evidence here is more akin to that in *Hernandez*. While there was evidence that Kidd had been drinking prior to the murder, that he may have been intoxicated, and that he made some "crazy" statements, there was also testimony that Kidd was only "buzzed" and not drunk. Further, the evidence showed that immediately prior to the shooting, Kidd was communicating and playing video games with the victim.

Under these circumstances, we conclude that when viewed in the light most favorable to Kidd, the evidence was insufficient to demonstrate that Kidd was so intoxicated that he was unable to form the specific intent necessary for first-degree murder. Thus, the trial court did not err in refusing to instruct the jury on voluntary intoxication.

*Prosecutorial Misconduct for Failing to Instruct Witnesses on Order in Limine*

During trial, the district court issued an order in limine prohibiting, *inter alia*, any reference to Kidd's prior criminal record, including whether he had "ever been arrested for a crime, spent any time in a prison or jail, or ha[d] ever been on probation or parole." However, during the State's case-in-chief, Detective Matt Hall testified on direct examination as follows:

"Q. The suspect—did you have a suspect that was the subject of this investigation?

"A. Yes, we did.

"Q. Please tell the jury who that subject was.

"A. Anthony Kidd.

"Q. Did you have a description of the subject?

"A. Yes, I did.

"Q. And give the jury the description.

"A. We actually also had a mug photograph of him.

"[Defense Counsel]: Objection."

After this objection, the district court permitted Kidd to question Detective Hall outside the presence of the jury regarding his knowledge of the limine order. Hall testified he was not advised before taking the stand that he was to avoid mentioning Kidd's prior arrests, criminal history, or mug shots. The prosecutor then conceded he had not instructed his law enforcement witnesses regarding the limine order and apologized "for not expressly stating that beforehand to law enforcement." Further, the prosecutor advised the court that following the detective's testimony, the prosecutor had informed his remaining law enforcement witnesses about the limine order and instructed them not to make any statements violating the order.

Following this proceeding, Kidd's counsel requested a curative instruction regarding the detective's response. Consequently, when the jury returned, the district court instructed the jury to disregard the last answer in its entirety and not to consider it in deliberations.

On appeal, Kidd contends the prosecutor committed misconduct by failing to instruct his witnesses regarding the order limiting evidence of Kidd's prior bad acts, resulting in the statement from Detective Hall regarding the defendant's mug shot.

Preliminarily, the State contends Kidd failed to preserve this issue for appellate review because he failed to contemporaneously object to the question posed. See K.S.A. 60-404; *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). However, Kidd does not challenge the question posed, but rather he challenges the prosecutor's failure to advise the State's witnesses of the order in limine, thereby failing to prevent Detective Hall's response violating the order.

Thus, it was not necessary for Kidd to object in order to preserve a claim of prosecutorial misconduct. See *King*, 288 Kan. at 349.

Here, Detective Hall testified that he was not instructed regarding the limiting order, and the prosecutor conceded he failed to instruct his witnesses regarding the order. See *State v. Wittsell*, 275 Kan. 442, 454, 66 P.3d 831 (2003) (when the court has issued an order in limine, the prosecutor has a duty to inform his or her witnesses of the order in limine and any subjects improper for testimony); see also *State v. Crume*, 271 Kan. 87, 101, 22 P.3d 1057 (2001) (even absent a limiting order, a prosecutor has a duty to guard against statements made by his or her witnesses that contain inadmissible evidence).

But even if we assume this violation of the prosecutor's duty constituted misconduct or error, Kidd's claim fails because he cannot establish the second prong of the prosecutorial misconduct test. See *State v. Naputi*, 293 Kan. 55, Syl. ¶¶ 1-2, 260 P.3d 86 (2011). Kidd does not suggest that the prosecutor's failure to instruct his witnesses regarding the limiting order was gross and flagrant or demonstrated ill will. Instead, he concedes the prosecutor "inadvertently" elicited the challenged testimony.

Further, Kidd argues: "It cannot be declared beyond a reasonable doubt that [Detective Hall's comments] had little, if any, likelihood of changing the result of Mr. Kidd's trial." Kidd reasons that the jury may have considered Hall's comment regarding Kidd's mug shot as evidence of Kidd's propensity to commit the instant crime or as relevant to whether he premeditated the killing.

But we are not required to consider, as Kidd suggests, whether the jury may have improperly considered Detective Hall's statement regarding his mug shot. Rather, we are tasked with determining whether the State proved beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record. See *Naputi*, 293 Kan. 55, Syl. ¶ 2.

During Kidd's 4-day trial, 29 witnesses testified. The evidence against Kidd was direct and overwhelming. Further, we find it is significant that after the detective violated the limiting order by briefly referencing Kidd's mug shot, the district court issued a curative instruction. The instruction, which was issued at defense

counsel's request, specifically directed the jury to disregard the detective's response and not to consider the response in subsequent deliberations. Under these circumstances, we have no difficulty in concluding beyond a reasonable doubt that the prosecutor's failure to instruct his witnesses regarding the order in limine and one witness' subsequent violation of that order did not affect the outcome of the trial in light of the entire record.

*Cumulative Error*

Kidd argues that even if we find the above errors to be harmless when viewed individually, his convictions should be reversed because the cumulative effect of the errors substantially prejudiced him and deprived him of his right to receive a fair trial.

"Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.] One error is insufficient to support reversal under the cumulative effect rule. [Citation omitted.]" *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009). Because we have found only one potential error here, we reject Kidd's cumulative error claim.

*Sentencing Error*

Next, Kidd argues the sentencing court's use of his prior convictions to enhance his sentence without proof to a jury beyond a reasonable doubt violated his Sixth and Fourteenth Amendment rights to the United States Constitution as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We reject Kidd's claim in light of our previous decisions. See *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008) (reaffirming *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 [2002]).

*Kidd's Pro Se Claims*

In his supplemental pro se brief, Kidd alleges numerous due process violations. Specifically, Kidd claims several witnesses perjured their testimony, the coroner incorrectly testified regarding the manner in which Tynus was shot, and the State fabricated the shotgun examination report. As the State notes, Kidd's arguments

are best characterized as a challenge to the sufficiency of the evidence.

"When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

Ladria testified Kidd shot through the kitchen window of her home while her children were present, and he then fired shots at her and her husband outside their home, killing Tynus. Jamie Oeberst, the district coroner, testified Tynus suffered 13 shotgun wounds, causing multiple injuries predominantly to his chest area. Oeberst testified the shots may have been fired by someone standing approximately 10 to 20 feet from Tynus, firing from the waist or chest area toward Tynus, who was probably turned slightly toward the shooter.

Johnson testified Kidd shot him through the hand. Vasudev Bhakta testified he checked Kidd into the Bellboy Motel on the night of the shooting and 4 months later he found a shotgun behind a dresser in the motel room Kidd stayed in that evening. Gary Miller, a firearm/tool mark examiner, testified the breech face markings on the shotgun shells of the shotgun found in the motel room matched the breech face markings of the spent shotgun shells found at the scenes of both shootings. Miller further testified that while he made a typographical error by interchanging two of the digits in one of the police case numbers in his report, he subsequently amended his report to reflect the correct police case number.

Viewing the evidence in the light most favorable to the prosecution, we conclude a rational factfinder could have found Kidd guilty beyond a reasonable doubt of first-degree murder, aggravated assault, criminal discharge of a firearm at an occupied dwelling, and aggravated battery.

Kidd also claims his Sixth Amendment right to effective assistance of trial counsel was violated by his counsel's failure to impeach Ladria "for dishonesty or inconsistent statements" and fail-

ure to secure expert testimony to counter the autopsy evidence. Kidd also appears to claim his counsel was ineffective for failing to object that the coroner's testimony did not meet the standard for admission of expert testimony. These claims were not raised before the trial court.

The trial court, which observed counsel's performance and was aware of the trial strategy involved, is in a much better position to consider counsel's competence than this court and should be the first to determine such an issue. See *State v. Van Cleave*, 239 Kan. 117, 119-20, 716 P.2d 580 (1986). Therefore, we decline to consider Kidd's ineffective assistance of counsel arguments for the first time on appeal. See *Trotter v. State*, 288 Kan. 112, Syl. ¶ 10, 200 P.3d 1236 (2009).

Finally, Kidd claims his right to a speedy trial was violated because "[t]he prosecutor ha[d] no more continuance [*sic*] to spair [*sic*] which was ground [*sic*] for dismiss [*sic*]." The State asserts Kidd's argument is conclusory in nature and fails to specify the manner in which his rights were violated.

We agree with the State. Because Kidd specifies neither the facts supporting his speedy trial claim nor the nature of his claim, we reject Kidd's allegation of a speedy trial violation. See *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008) (the appellant bears the burden to designate a record that supports his or her claim of error at the trial court; without such a record, the claim of alleged error fails).

Affirmed.