NOT DESIGNATED FOR PUBLICATION

No. 114,967

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMAAL A. SUMMERS,
*Appellant*

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed February 3, 2017. Affirmed.

*Steven Willibey*, of Kansas City, Missouri, and *Adam G. North*, of Kansas City, Missouri, for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., POWELL, J., and HEBERT, S.J.

*Per Curiam*:  After his murder conviction was affirmed on direct appeal, Jamaal A. Summers filed a K.S.A. 60-1507 motion, alleging that he received ineffective assistance of trial counsel. Following an evidentiary hearing, the district court denied the motion, finding that trial counsel was effective. On appeal, Summers challenges the district court's denial of his motion. After a thorough review of the record, we find no error by the district court and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2007, Salvador Velasquez' wife returned home to find Velasquez' body on the floor. He had been shot in the chest, head, and neck. Earlier that day, Velasquez had told his wife and a neighbor that his friend "Homi" was coming over. Police found numbers in Velasquez' phone listed under "Homi" and "Homi2" and were able to trace one of the numbers to Summers. Phone records showed 12 calls between the two men on the day of the shooting. Velasquez' wife identified Summers as the man she knew as "Homi." One of Velasquez' neighbor also identified Summers as the man she saw at Velasquez' house before the shooting. When police questioned Summers, he initially denied knowing Velasquez but later admitted that Velasquez was one of his marijuana dealers.

Police learned that Summers owned a .40 caliber handgun, the same caliber as the three shell casings found in Velasquez' house. On the morning of the shooting, Summers reported the gun stolen. As part of the investigation, police also spoke with Summers' former neighbor, who reported that she heard gunshots coming from Summers' yard more than 6 months before on New Year's Eve. The neighbor's son found a spent shell casing in the yard, which he gave to police. The State ultimately charged Summers with first-degree murder.

David Wright, a Kansas Bureau of Investigation firearms expert, testified at trial that when firearms are manufactured, toolmarks are created on the firearms which can be transferred to bullets or shell casings, enabling him to match bullets or shell casings to a particular gun. Based on the toolmarks on the shell casings found at the scene and the toolmarks on the shell casing found by Summers' former neighbor, Wright concluded that all four shell casings were fired from the same gun.

The lead detectives testified about trying to conduct a second interview with Summers' wife. The first detective testified that when they approached Summers' wife a second time, she told them to contact "her attorney." The second detective testified that Summers' wife said they could speak with "their attorney." At the end of the 5-day trial, the jury found Summers guilty.

Following his conviction, Summers filed a direct appeal with the Kansas Supreme Court, which affirmed his conviction in *State v. Summers*, 293 Kan. 819, 272 P.3d 1 (2012). Summers then filed his present motion under K.S.A. 60-1507, raising claims of ineffective assistance of trial counsel. The only witness Summers presented at the evidentiary hearing was trial counsel. In a memorandum decision, the district court concluded that even assuming deficient performance by trial counsel, Summers had not established prejudice. Moreover, the court found that Summers, who had the burden to prove that another attorney would have acted differently based on the evidence presented against him, had failed to do so. Finding that trial counsel provided effective assistance of counsel, the district court denied Summers' motion.

Summers timely appeals.

DID THE DISTRICT COURT ERR IN DENYING SUMMERS' K.S.A. 60-1507 MOTION?

When a district court conducts a full evidentiary hearing to consider claims raised in a K.S.A. 60-1507 motion, it must issue findings of fact and conclusions of law. Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222). We review the district court's findings of fact, determining whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). The district court's conclusions of law are reviewed de novo. *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011).

3

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). To show that counsel was ineffective, a movant must show that (1) counsel's performance was deficient; and (2) counsel's deficient performance caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). Counsel's performance was deficient if, considering all the circumstances, it "fell below an objective standard of reasonableness." *Bledsoe v. State,* 283 Kan. 81, 90, 150 P.3d 868 (2007). A strong presumption exists that counsel's conduct was reasonable. 283 Kan. at 90. "[W]hat witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions" are within counsel's province and are virtually unchallengeable. *Thompson*, 293 Kan. at 716; see *Strickland*, 466 U.S. at 690-91.

Prejudice is proven

"by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Bledsoe*, 283 Kan. at 90-91.

Circumstantial evidence alone is sufficient to support a conviction of even the gravest offense. *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016).

A.    *Wright's testimony*

Summers' first claim is that trial counsel failed to effectively challenge Wright's testimony about the shell casings. As Summers notes, some federal district courts have held that while admissible under the federal standard for expert testimony, toolmark

4

matching is a subjective determination and a firearms expert may only testify that a match between a shell casing and a gun is more likely than not. See *United States v. Glynn*, 578 F. Supp. 2d 567, 570-75 (S.D.N.Y. 2008); *United States v. Monteiro*, 407 F. Supp. 2d 351, 356-75 (D. Mass. 2006); *United States v. Green*, 405 F. Supp. 2d 104, 108-24 (D. Mass. 2005). Based on these cases, Summers argues that trial counsel should have challenged Wright's testimony by filing a pretrial motion in limine, objecting at trial, and cross-examining Wright about the subjectivity of his analysis.

While the federal cases that he mentions do limit the admissibility of an expert's toolmark analysis testimony, Summers does not point to any Kansas authority on the issue. In fact, no Kansas court has cited those cases. More importantly, there appears to be contrary authority from the Kansas Supreme Court. In *State v. Churchill*, 231 Kan. 408, 414, 646 P.2d 1049 (1982), the expert testified "that toolmark examinations in human tissue were conducted by the same procedures and governed by the same principles applicable generally in toolmark examinations," and our Supreme Court upheld as admissible testimony regarding toolmark evidence which involved the matching of a knife to a wound. Other Kansas cases have accepted without comment evidence that shell casings were matched to a particular gun using toolmark analysis. See, *e.g.*, *State v. Netherland*, 305 Kan. 167, 174, 379 P.3d 1117 (2016); *State v. Kidd*, 293 Kan. 591, 600, 265 P.3d 1165 (2011); *State v. Moore*, 287 Kan. 121, 128, 194 P.3d 18 (2008); *State v. Scott-Herring*, 284 Kan. 172, 176, 159 P.3d 1028 (2007); *State v. Martis*, 277 Kan. 267, 272, 83 P.3d 1216 (2004); *State v. Davis*, 275 Kan. 107, 114, 61 P.3d 701 (2003); *State v. Jones*, 273 Kan. 756, 761, 47 P.3d 783, *cert. denied* 537 US. 980 (2002); *State v. Manard*, 267 Kan. 20, 24, 978 P.2d 253 (1999).

At the evidentiary hearing, trial counsel testified that he did not file a motion in limine because he did not think Kansas law supported one. "When defense counsel has no sound basis to believe that a pretrial motion would have merit and has no reasonable evidence or argument upon which to base such a motion the failure to make it cannot be

5

equated with ineffective assistance of counsel." *Chamberlain*, 236 Kan. 650, Syl. ¶ 5. Here, even though a few federal cases may have provided a reasonable argument, contrary authority in Kansas caselaw means that trial counsel's decision not to file a motion was also reasonable.

Trial counsel also challenged Wright's testimony in other ways. He questioned Wright about whether being outside and possibly exposed to a lawnmower could have affected the markings on the shell casing Summers' former neighbor found. Most importantly, trial counsel had Wright admit that he could not say with any degree of scientific certainty that the projectiles found in Velasquez' body were fired from a particular gun because they were not submitted to him for testing. Trial counsel also elicited testimony from Wright that the presence of other guns, including a revolver, could not be ruled out because spent shell casings are retained in a revolver and would not have been left at the scene unless the shooter purposely removed the shell casings from the revolver's cylinder. Accordingly, we conclude trial counsel's cross-examination of Wright thus fell "within the wide range of reasonable professional assistance." See *Bledsoe*, 283 Kan. at 90.

However, even if we presume trial counsel should have done more to challenge Wright's testimony, he gave valid reasons for not doing so. Summers presented an alibi defense at trial and said his gun had been stolen, so trial counsel did not think it was important to show whether the shell casings matched the gun; instead, he thought it would be better to simply cross-examine Wright about the possibility of multiple guns. Trial counsel knew that Wright was a good witness, and he was concerned that challenging Wright too much would make things worse. Because the decisions to present an alibi defense and how to cross-examine Wright were strategic, trial counsel's decision not to challenge Wright's testimony any more than he did was reasonable. See *Thompson*, 293 Kan. at 716; *Strickland*, 466 U.S. at 690-91.

6

B.      *Detectives' testimony*

Summers' second claim is that trial counsel allowed the State to elicit improper testimony during its direct examination of the police detectives. According to Summers, the detectives made impermissible references to his constitutional right to counsel when the detectives testified that Summers' wife told them to direct any more questions to their attorney. Summers argues that trial counsel should have objected to the detectives' testimony, relying on *State v. Dixon*, 279 Kan. 563, 576-79, 591, 112 P.3d 883 (2005), where the Kansas Supreme Court held that prosecutors may not elicit any references to a defendant seeking the assistance of counsel, which may imply the defendant's guilt.

We reject Summers' argument because the testimony was permissible. First, one detective testified that Summers' wife said to contact *her* attorney, in no way referencing that Summers had sought the assistance of counsel. Second, this case is distinguishable from *Dixon*. There, the prosecution directly questioned four witnesses about the defendant speaking and meeting with his attorney. The testimony was extensive and clearly intended to imply that the defendant was guilty. Here, the second detective's reference to "their attorney" only implies that the attorney might have also been Summers'. The testimony was brief and seemingly intended to show that detectives were unable to interview Summers' wife a second time. Because the State did not elicit any direct references to Summers seeking the assistance of counsel, trial counsel's decision not to object was reasonable.

Trial counsel also explained why he did not object. First, according to counsel, because in his mind the testimony was directed at Summers' wife and her actions and not his client, he was not even sure he noticed the use of the word "their." Second, counsel stated he knew that objecting would draw attention to the issue and he did not want the jury to think he was concerned about it. Since it was strategic, trial counsel's decision not

7

to object was reasonable. See *Thompson,* 293 Kan. at 716; *Strickland*, 466 U.S. at 690-91.

C.    *Prejudice*

Summers also claims that trial counsel's failure to limit or challenge Wright's testimony and to object to the detectives' testimony prejudiced him. He essentially argues that the State's evidence was circumstantial and underwhelming, pointing to weaknesses in the testimony of several witnesses. But because trial counsel's performance was not deficient, we need not even consider whether trial counsel's performance affected the outcome of Summers' trial. See *Strickland*, 466 U.S. at 697.

Even if we assume trial counsel's performance was deficient, Summers was not prejudiced. First, trial counsel's alleged failure to limit and challenge Wright's testimony did not affect the trial's outcome. The State did not conclusively tie Summers to the shell casing that his former neighbors found, and it did not conclusively tie the shell casings found at the scene to the projectiles found in Velasquez' body. Had Wright been forced to testify that the shell casings were more likely than not fired from the same gun, his testimony would have done little to weaken the already circumstantial evidence. It is doubtful that limiting Wright's testimony would have made any difference in the minds of the jurors as Summers has not shown that the jurors would have paid any attention to the expert's use of the qualifying phrase "more likely than not."

Second, trial counsel's decision not to object to the detectives' testimony also did not affect the jury's verdict. The reference to "their attorney," which only implied that Summers may have had a lawyer, was brief. Summers, in his case-in-chief, also elicited similar testimony from his wife, who referenced "the attorney," which could also imply that the lawyer represented Summers. While our court has held that references to a defendant seeking the assistance of counsel cannot be deemed harmless error, *Quinton v.*

8

*State*, No. 112,439, 2015 WL 7693691, at *8 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* December 22, 2015, our Supreme Court, however, has still considered harmlessness when reviewing the issue in the context of prosecutorial error claims. See *Dixon*, 279 Kan. at 591-92. The harmlessness standard used in prosecutorial error cases has the same or a higher degree of certainty than the prejudice standard used in ineffective assistance of counsel cases. See *State v. Ward*, 292 Kan. 541, 562-66, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); *Bledsoe*, 283 Kan. at 90. It follows that we may still conclude that trial counsel's decision not to object to the detectives' testimony did not prejudice Summers.

Finally, when considering all of the evidence, there is no reasonable probability that, but for trial counsel's conduct, the outcome of Summers' trial would have been different. Velasquez told his wife and another witness that "Homi" was coming over. A phone number in Velasquez' phone belonged to Summers. There were 12 calls between Velasquez and Summers on the day of the shooting. Summers initially denied knowing Velasquez. Velasquez' wife identified Summers as "Homi." A witness saw Summers at Velasquez' house before the shooting. Summers owned a .40 caliber handgun, which he reported stolen on the morning of the shooting. The tool marks on the .40 caliber shell casings found at the scene matched the tool marks on the shell casing that Summers' former neighbor found. While the evidence may be circumstantial, it is sufficient to uphold Summers' conviction. See *Darrow*, 304 Kan. at 716.

Therefore, the district court did not err in denying Summers' K.S.A. 60-1507 motion.

Affirmed.