NOT DESIGNATED FOR PUBLICATION

No. 118,837

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HANBIT J. CHANG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed May 17, 2019.
Affirmed.

*Adam M. Hall*, of Thompson Warner, P.A., of Lawrence, for appellant.

*Mark Simpson*, assistant district attorney, *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

SCHROEDER, J.: Hanbit J. Chang appeals his jury conviction for sexual battery. On the morning the trial was set to begin, the State filed a motion in limine, and the district court granted the motion excluding evidence of text and social media messages between Chang and the victim, A.S. The messages entailed Chang's discussions with A.S. about having sex and her responses. Unfortunately, the exact language of the discussions is not part of the record on appeal. At trial, A.S. testified Chang never "made a move" on her, and she claimed she was unaware of Chang's romantic interest in her. The district court ruled A.S.'s testimony did not "open the door" to impeachment using the excluded

1

evidence. Chang now argues the district court erred in excluding the messages because this denied him the ability to present his theory of defense: A.S. impliedly (nonverbally) consented then withdrew her consent. Chang also argues the district court erred in limiting his cross-examination of A.S., the prosecutor committed error during closing arguments, and he is entitled to a finding of cumulative error. Upon review of the record, we find no support for Chang's claims. We affirm.

FACTS

Chang and A.S. were close friends from high school and communicated daily between high school graduation and Labor Day 2016. Chang asserted he had long had romantic feelings for A.S., but she claimed she did not know he was attracted to her romantically or sexually. Chang never expressly made his romantic feelings known to her, rather he thought his actions indicated his feelings. There was talk of the two going to a high school dance, but instead they went on a road trip through Missouri together. Chang attended the University of Kansas (KU) during the fall of 2016 while A.S. chose to attend the University of Nebraska-Omaha.

During Labor Day weekend, A.S. visited KU to meet with high school friends, including Chang. She first visited two friends, J.A. and E.S., and later met Chang at a party. A.S. arrived sober at the party around 11 p.m., had two drinks, and felt rather drunk. Chang mixed A.S.'s second drink, but she did not finish it. A.S. later testified she and Chang did not flirt or cuddle at the party. J.A. testified Chang attempted to flirt and cuddle with A.S., and A.S. was not receptive to Chang's behavior. J.A. also asked Chang to "back off a little bit." A.S. also testified while at the party, her bra made her uncomfortable, so she removed it and put it in her purse.

At the end of the party, a debate broke out over where A.S. would sleep. The party's host offered to sleep on the floor and allow A.S. to sleep in his bed, but A.S. chose

2

to sleep elsewhere. A.S., Chang, E.S., and J.A. left the party around 2:30 a.m. The group went to J.A.'s and E.S.'s room; A.S. picked up her phone charger, then A.S. and Chang went to his room two floors up. Chang's roommate, S.M., was out of town, and A.S testified she slept in Chang's room because she wanted everyone to be able to sleep in a bed.

Once in Chang's room, A.S. asked for and Chang gave her a change of clothes. A.S. claims she asked Chang to turn around while she changed clothes, and when he refused, she waited for him to not look before she changed. A.S. stated she sensed no sexual overtones but only thought this was weird. Chang testified he turned around while she changed clothes.

According to A.S., Chang offered to sleep in his roommate S.M.'s bed even though there were no sheets on it. A.S. testified S.M. took his sheets home to wash them. According to Chang, S.M.'s bed had sheets, and Chang gave A.S. the option to sleep in either bed. He testified he never told A.S. he would sleep in S.M.'s bed. S.M. also testified he did not remove his sheets that weekend, and when he returned following the weekend the sheets were still on the bed.

A.S. got into Chang's bed with him and they discussed a painting she had made for him which he kept next to the bed. The painting commemorated their trip to Missouri. Chang tried to watch a movie with A.S. on his laptop while the two were in the bed together. A.S. told Chang she wanted to sleep and turned to her side. After about five minutes, Chang told A.S. he was going to sleep. A.S. responded "good" when Chang closed his laptop and reached over A.C., placing it on his desk. A.S. stayed in bed with Chang because she "didn't think anything of it," and, according to her testimony fell asleep.

3

Chang then tried to cuddle with A.S., touched her breast, and attempted to touch her vagina. A.S. testified she woke up to Chang feeling her breasts. Chang admitted to touching her breast and trying to move toward her vagina before stopping. A.S. said nothing and pretended to be asleep. She did not protest verbally, but clenched her legs so Chang could not reach further than her bikini line. Chang stopped at this point and withdrew his hand from underneath her clothes. A.S. pretended to wake up and left the room. Chang asked her where she was going and she said to the bathroom. A.S. testified Chang's touching was unwanted. She never told Chang he could touch her breasts or move down her body toward her vagina. A.S. also testified she never expected it because Chang "never made advances in the past at all."

Chang did not testify clearly whether A.S. was asleep or awake. Immediately following the incident, Chang admitted to KU's Title IX investigator he believed A.S. was asleep when he began touching her. At trial, Chang testified he assumed because of the short period of time between when he closed the laptop and when he began touching her, there was no way she could have been asleep or at least not in a deep sleep.

Upon leaving the room, A.S. went to J.A.'s and E.S.'s room and arrived crying. A.S. and J.A. reported the incident as a sexual assault to the dorm manager. A.S. had no further conversations with Chang, and she later reported the incident to the KU police department.

Chang was charged with sexual battery. The morning of Chang's trial, the State moved to exclude, among other things, two pieces of evidence. The first was a statement Chang made to the investigator for KU about a Snapchat conversation Chang had with A.S. reflecting A.S. told Chang she would "get together" with him if she were drunk. The State argued this was self-serving hearsay and should not be brought up at trial unless Chang testified. The second piece of evidence was a text message conversation between Chang and A.S. where he asked her to take his virginity and she declined.

4

The State's rationale for excluding both conversations was that the discussions were not relevant to any element of sexual battery, including whether A.S. consented to Chang's sexual advances on the night of the incident. The State further contended the messages supported only an argument A.S. "should have known better" than to share a room with Chang. Chang objected, saying the messages were relevant to whether A.S. nonverbally consented. Chang argued they were needed to mount the defense theory of implied consent because they put A.S.'s actions in context. Chang also argued against exclusion of the messages saying, "without the allowance of what came before and what she knew and what he had told her and her response, it allows the State to make arguments that I have a lot of trouble refuting because the Court is disallowing us." After much discussion, the district court excluded the evidence.

During A.S.'s cross-examination, Chang asked the district court to allow him to impeach A.S. using the messages. He claimed A.S. opened the door when she testified that Chang "never previously had made a pass at me at all." Chang argued, "if saying you want to have sex with someone is not hitting on her, I don't know what is." The court allowed Chang to ask A.S. to clarify her testimony and she explained Chang "never tried to kiss me or anything. The most we ever did was hug." Then Chang attempted to ask whether a text could be considered an advance. The State objected and the court, after discussion, stopped Chang from proceeding further with that line of questioning. Chang next asked A.S. whether she had reason to believe he was romantically attracted to her when she visited him, and she said no. Chang did not try to impeach her or clarify the issue further with additional objections or proffer of the messages to preserve them for appeal.

Outside the presence of the jury, the district court heard arguments about limiting Chang's testimony before he testified. The State argued Chang should not be allowed to testify about his messages to A.S. asking her to take his virginity. The State claimed his attraction toward her bore no relevance to her consent. The State analogized the

circumstances to a victim's prior sexual conduct, saying it was not automatically admissible. Ultimately, the State argued excluding testimony about the messages was appropriate because it protected against the idea A.S. should have not been in the room with Chang.

Chang countered by arguing evidence of A.S.'s knowledge of his feelings was relevant to interpreting her actions on the night in question. Chang proposed testifying he sent a message to A.S. telling her, "I want to have sex with you," and she responded, "I will if I get drunk." Chang argued the testimony about the messages was relevant to the context of the entire night and his theory of "implied consent." The district court ruled Chang could not testify about the messages. The district court allowed Chang to testify about his state of mind but not about him communicating his attraction to A.S. The district court noted even if the messages were evidence of consent, consent must be at the time of the act and A.S. testified she was asleep when Chang touched her. Chang responded whether A.S. was asleep or awake when he touched her was a contested issue.

Chang then testified. Chang admitted he touched A.S. in a sexual manner. He also acknowledged A.S. did not give him verbal permission to touch her. He denied discussing anything sexual with A.S. that night. According to Chang, A.S. was not receptive to him touching her breasts or moving toward her vaginal area. Based on the court's prior rulings, Chang did not testify about the sex-related messages.

During closing argument, the State referenced A.S.'s state of mind during the night of the incident several times. The State argued: "She did not expect him to do this to her. And she didn't understand it when it first started happening, and so she froze because she thought she was safe." Later, the State argued: "When I was questioning the Defendant, did he ever say they talked about this, about this happening? Did he bring it up? Did she bring it up? No. You heard no evidence. Where is the consent coming from? From her being in his room?"

6

In rebuttal, the State argued, "Do you believe that, that this woman got in the bed and that meant he could touch her vagina? No conversation. No talking about it. She is in the bed and that is consent. Is that a reasonable view to have of this situation?" In addressing Chang's defense theory, the State argued:

"[T]his implied consent that [defense counsel] talked about, that is not in your instructions. You didn't hear that term. That is a term that he has made up and is using with you. And it's really an argument that is a way of saying, well, she said yes without actually saying yes. Because all the evidence you heard is that not only did she not say yes, but it was never discussed. The defendant just did it to her, took it upon himself and started touching her."

The State also addressed Chang's theory of implied consent by saying "implied consent sounds like a way of saying, well, he thought she consented by her actions. But she told you she didn't consent. And her actions tell you she didn't consent." Given the State's argument above, the State did exactly what Chang argued against in response to the State's motion in limine. However, Chang did not raise this as an issue under prosecutorial error on appeal.

The jury convicted Chang.

ANALYSIS

*Trial court did not err in excluding electronic messages*

The sexual battery statute does not define consent. See K.S.A. 2018 Supp. 21-5505. Chang's trial defense strategy relied on the theory of A.S.'s "implied consent." To accomplish this, Chang asserts he needed to put A.S.'s actions on the night of the incident into context based on their messages leading up to the weekend visit. Chang asserts excluding the messages resulted in an unfair trial because the jury could not make a fully

7

informed judgment about A.S.'s consent. He claims the district court denied him of his right to present his defense theory.

In cases where a defendant asserts the district court has unconstitutionally limited the right to present the chosen theory of defense, the appellate court reviews the issue de novo. *State v. Seacat*, 303 Kan. 622, 638, 366 P.3d 208 (2016). "'It is fundamental to a fair trial that the accused be afforded the opportunity to present his or her defense to the charge so the jury may properly weigh the evidence and reach its verdict.'" *State v. Mayes*, 254 Kan. 479, 487-88, 866 P.2d 1037 (1994) (quoting *State v. Humphrey*, 252 Kan. 6, Syl. ¶ 3, 845 P.2d 592 [1992]). A district court violates a defendant's fundamental right to a fair trial if it excludes relevant, admissible, and noncumulative evidence which is an integral part of the theory of the defense. *State v. Roeder*, 300 Kan. 901, 927, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015). Even so, the right to present a defense is subject to statutory rules and judicial interpretation of the rules of evidence and procedure. 300 Kan. at 927. "[E]xclusion of evidence is not necessarily error when the defendant nevertheless presented other evidence supporting the theory at issue that would have been sufficient for a jury to reach a conclusion as to that theory's validity." *State v. Maestas*, 298 Kan. 765, 782, 316 P.3d 724 (2014).

To review whether the district court erred when it excluded the messages, we start by asking whether they were relevant to the issue of consent. See *State v. Woolverton*, 284 Kan. 59, 63, 159 P.3d 985 (2007). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). Relevance has two components: materiality, which is reviewed de novo; and probativity, which is reviewed for abuse of discretion. *State v. Page*, 303 Kan. 548, 550-51, 363 P.3d 391 (2015). An abuse of discretion occurs if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

8

Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). The substantive law in Chang's case is sexual battery, found in K.S.A. 2018 Supp. 21-5505. It includes the element of consent which forms the basis of Chang's theory of defense and is the fact in dispute. Chang argued against excluding the messages, claiming "[t]he issue here is consent, and consent is not defined in Kansas. It's not going to be defined in the instructions to the jury. Consent can be implied consent. It could be verbal consent. It could be physical consent." The final jury instructions at Chang's trial included two specific references to consent:  "[A.S.] did not consent to the touching," and "It is not a defense that the defendant did not know or have reason to know that [A.S.] did not consent to the battery." Thus, the evidence of the messages is material.

The second component of relevance, probativity, forms the core of Chang's first issue on appeal. Evidence is probative if it furnishes, establishes, or contributes toward proof of a point. *McCormick*, 305 Kan. at 47. We review the probative value of excluded evidence under an abuse of discretion standard. See 305 Kan. at 47. The messages must help establish A.S.'s consent to be found probative.

On appeal, Chang argues the messages are probative to his implied consent defense because the messages provide context for A.S.'s actions that night. According to Chang, A.S. decided to sleep in his room, change into his clothing, remove her bra, and sleep with him in his bed. Neither party added the exact content of the messages or clearly established when the messages were sent to the appellate record. That said, we know from the record a few days before A.S. visited Lawrence, Chang asked her via text message to take his virginity, and A.S. said no. Chang also claimed he messaged A.S. via Snapchat about her willingness to have sex with him and she said she would if she were drunk. According to Chang, testimony regarding these messages needed to be elicited at

9

trial. As the trial progressed, both the prosecution and defense mixed the content of these messages and were generally referred to as only one electronic conversation and not two.

The district court excluded the messages, explaining:

"This just smacks to me of, you know, a woman saying no is not really a no, and in order for a woman to—no to mean no, that means she never—can never have contact with you again, because, obviously, if she wants to still hang around with you, it must mean that in her heart, she really wants to have sex with you."

In ruling this way, the district court did not address relevance, and Chang asserts this amounted to improper weighing of evidence and a usurpation of the jury role. Even if evidence is relevant, the trial court has discretion to exclude it when it finds probative value is outweighed by potential for producing undue prejudice, which is also reviewed by this court under the abuse of discretion standard. See K.S.A. 60-445; see also *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

The district court ruled Chang could not discuss the messages. It allowed him to testify only about his state of mind. The court reasoned: "He can testify that she wasn't asleep. He can testify to whatever he perceived at that time. But consent—the issue of consent is at the time of the act." In this discussion, the district court reasoned the messages sent days before the incident had the potential to mislead the jury into thinking the messages counted as valid consent at the time of the touching. The district court's decision reflects the messages were exchanged days before the incident and thus bore little relevance to nonverbal consent when A.S. was in Chang's bed.

Chang analogizes this case to *State v. Perez*, 26 Kan. App. 2d 777, 995 P.2d 372 (1999). There, a panel of this court ruled the exclusion of evidence of an alleged victim's sexual conduct with other men hours before sexual contact with the defendant prevented

10

the defendant from presenting his theory of defense in court. 26 Kan. App. 2d at 784. The appellate court ruled "the trial court prevented Perez from painting a complete and accurate picture of the events taking place that morning." 26 Kan. App. 2d at 784. As the defendant, Perez argued the evidence of the victim's actions that day was relevant to both her consent and impeaching her testimony. This analogy fails because the crime charged, the separation in time, and the evidence proffered are all different from Chang's case. Perez was charged with rape, not sexual battery, and the evidence proffered was prior sexual acts which were consensual and only hours prior, not messages sent days beforehand discussing the possibility of having sexual intercourse. The facts between *Perez* and this case are not sufficiently similar to support Chang's argument. The prejudicial effect of the messages outweighs their probative value. Even presuming the content favorable to Chang, the messages were exchanged days before the incident. Here, a reasonable person could take the view of the district court and exclude the messages. The district court did not abuse its discretion by excluding the messages.

*Cross-examination limited*

Chang next argues the district court improperly limited his cross-examination of A.S. The Sixth Amendment secures for parties an opportunity for confrontation, and trial judges retain wide latitude to impose reasonable limits on cross-examination to avoid confusion of issues, harassment, and prejudice. See *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). "'[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 [1985]). Chang carries the burden of establishing the district court abused its discretion in limiting the cross-examination and weighing the probative value of evidence used to impeach A.S. See *State v. Tague*, 296 Kan. 993, 1005, 298 P.3d 273 (2013). An abuse of discretion occurs if (1) no reasonable person would take the view adopted by the trial

11

court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Marshall*, 303 Kan. at 445.

On direct examination, A.S. stated she never expected Chang to touch her breasts or move toward her vaginal area because Chang had "never made advances in the past at all." On cross-examination, Chang argued for the district court's permission to use the sexually related texts to impeach A.S. Chang argued "[b]y sending her a text he wants to sleep with her and wants . . . her to take his virginity, that is a pass. I think it opened the door." The State requested the court direct Chang to clarify what A.S. meant by saying "never made advances." The State agreed Chang could impeach A.S. with the messages if A.S. responded by saying Chang never talked about anything sexual. The district court agreed and ordered Chang to clarify what A.S. meant by "advances." She testified Chang "never tried to kiss me or anything. The most that we ever did was hug." Chang attempted to ask about messages, but the district court cut off further attempts to impeach A.S. Out of the hearing of the jury, Chang argued: "I didn't talk about a specific text. I am just trying to inquire about if that is considered a pass. If she is now saying that a pass was a physical pass, doesn't mean that this text wasn't also a pass in her mind." The district court found A.S. confirmed she meant there was never anything physical between them and ordered Chang to move on. A.S. also testified she never had reason to believe Chang was romantically attracted to her when she visited Lawrence on Labor Day.

On appeal, Chang now argues the district court erred by prematurely cutting off his cross-examination of A.S. He claims impeachment by using the messages would cast doubt on A.S.'s alleged lack of knowledge about Chang's romantic feelings. Essentially, he argues this caused the jury to be left with the impression A.S. was credible, naïve about Chang's intentions, and exploited. Or, in the alternative, if admitted, A.S. misread Chang's actions toward her leading up to and including what took place in Chang's room.

12

Evidence presented in cross-examination is still required to be admissible and relevant. See *Tague*, 296 Kan. at 1005. Credibility is always relevant at trial. See *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249 (2006). The use of the messages to impeach A.S.'s statement was unnecessary because the district court ordered the issue of whether Chang "made advances" clarified, and A.S. clarified it without mentioning messages between them. Thus, the district court did not abuse its discretion in preventing use of the messages for impeachment purposes, and Chang's right to confront A.S. was not violated in this instance.

Chang also argues the district court erred by not letting him use the messages to impeach A.S. when she testified to being unaware of his romantic interest in her in the following exchange:

"Q. (By [defense counsel]) [A.S.], didn't you have reason to believe that [Chang] was romantically attracted to you when you came to Lawrence on Labor Day?
"A. No.
"Q. Were you aware of [Chang] having a girlfriend back in that time frame, back on Labor Day of 2016?
"A. No."

At trial, Chang did not try to impeach A.S.'s testimony that she was unaware of his romantic attraction to her by either using the messages or other means. Instead, he moved on asking unrelated questions. Here, he failed to object or ask the court for permission to further explore her claimed lack of knowledge. We do not consider constitutional issues raised for the first time on appeal unless an appellant specifically cites an exception to this rule in his or her brief. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). These exceptions can include: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal

13

despite its reliance on the wrong ground or having assigned a wrong reason for its decision. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Chang did not attempt to impeach A.S. following his question about her knowledge of his romantic interest, and he does not address an exception enabling him to raise this issue on appeal, so we decline to consider it.

*No prosecutorial error*

Chang alleges two types of prosecutorial error occurred during the State's closing argument. A claim of prosecutorial error based on comments made during closing argument will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012); see *State v. McBride*, 307 Kan. 60, 64-65, 405 P.3d 1196 (2017). The appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

14

Courts do not isolate the prosecutor's comments challenged on appeal but review those comments in their context. *State v. Butler*, 307 Kan. 831, 865, 416 P.3d 116 (2018). Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. See *Sherman*, 305 Kan. at 114.

First, Chang claims the State misstated four times to the jury that Chang touched A.S.'s vagina, when according to both sides' testimony, Chang touched only her bikini area and never her vagina. Stating facts not in evidence constitutes error, and the appellate court would then consider whether the misstatement was plain error. See *State v. Hall*, 292 Kan. 841, 848, 257 P.3d 272 (2011). The statements cited in Chang's appellate brief were hypotheticals referencing A.S.'s consent, such as, "Do you believe . . . that this woman got in the bed and that meant he could touch her vagina?" Reviewing these statements in context shows the State did not tell the jury Chang touched A.S.'s vagina, but rather Chang's goal was to touch A.S.'s vagina. Thus, the State did not misstate facts.

Second, Chang alleges the State misstated the law by telling jurors there is no such thing as implied consent. In its rebuttal, the State argued:

> "You know, this implied consent that [defense counsel] talked about, that is not in your instructions. You didn't hear that term. That is a term that he has made up and is using with you. And it's really an argument that is a way of saying, well, she said yes without actually saying yes. Beca
> "So there is no such thing as implied consent."

Chang alleges this statement constituted an argument against the existence of implied consent as a concept. When a misstatement of controlling law is made deliberately, it is outside the considerable latitude given to prosecutors during their arguments. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

15

Here, the State charged Chang with sexual battery. However, the sexual battery statute does not define "consent." See K.S.A. 2018 Supp. 21-5505. Chang objected immediately following the prosecution's statement by saying: "Consent is not defined, and I am allowed to argue consent, and he is allowed to argue otherwise." The court responded by saying: "It's not defined. Both of you can argue what you want to argue." Therefore, the district court informed the jury that both Chang and the State could argue for their understanding of consent. It became a fact question for the jury to decide if there was consent.

Given these arguments, we find no prosecutorial error and need not address the prejudice.

*No cumulative error*

Chang's last argument is a claim of cumulative error. In support of the claim, Chang states:  (1) he was denied the opportunity to present his defense through the sexually oriented text messages; (2) the district court improperly limited his cross-examination of A.S.; and (3) the prosecutor repeatedly misrepresented how he touched A.S. to the jury during closing argument and the prosecutor misstated the law on implied consent.

The test for cumulative error is whether the totality of the circumstances establish the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose, the nature and number of errors and their interrelationship, if any, and the overall strength of the evidence. 300 Kan. at 1007. If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *Santos-Vega*,

16

299 Kan. at 27-28. The appellate court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *Marshall*, 303 Kan. at 451. A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

The record does not support the errors Chang alleges. We have found no errors and cumulative error requires more than one error. With no errors, there can be no cumulative error. See *Gonzalez*, 307 Kan. at 598.

Affirmed.

* * *

ATCHESON, J., concurring: I concur in the result the majority reaches in affirming Defendant Hanbit J. Chang's conviction for sexual battery, and, for the most part, I haven't material quarrels with how the issues have been addressed. But we have found the Douglas County District Court's handling of purported communications between Chang and A.S., his victim, to be particularly challenging, largely because the trial record is vexingly imprecise. The imprecision has kept us from fully exploring the arguments Chang's appellate lawyer has raised.

As I understand the record, two distinct communications between Chang and A.S. before their Labor Day weekend encounter were at issue at trial and the subject of the State's motion in limine. They were e-mail, tweets, or some similar electronic exchanges that Chang argued bore on A.S.'s consent to his touching of her in a way everyone agrees would otherwise be a sexual battery. The district court granted the motion in limine and excluded both communications. The ruling was revisited at several points during the short jury trial. The district court continued to exclude the communications, although the

17

rationale for doing so appears to have evolved as the trial progressed and, in particular, once Chang decided to testify in his own defense.

The key problem for us on appeal is the lack of a detailed proffer of the communications. It does not appear as if anyone had hard copies of the messages. Nothing like that was tendered to the district court or made part of the record. We have various vague paraphrases from the lawyers as to what the communications supposedly conveyed. But Chang's lawyer never specifically and clearly proffered the precise content of the messages or what Chang would say they contained. Nor did the lawyer have Chang make a testimonial proffer. So we really don't know exactly what Chang claims he and A.S. said or how they said it. Compounding the problem with the communications, we have no real idea when they occurred. As to one of the communications, we have references by the prosecutor to "some days" before Chang and A.S. met on Labor Day weekend and "a few days" or "three to seven days[,] I think" from Chang's trial lawyer. We haven't even that kind of speculative timeframe for the other communication. Both the content and the timing of the exchanges were, of course, pertinent to their potential relevance on the issue of consent.

A sufficiently detailed proffer of excluded evidence is critical to establishing a suitable record for appellate review. See K.S.A. 60-405; *State v. Love*, 305 Kan. 716, 724-25, 387 P.3d 820 (2017). And as the party seeking review, Chang has the obligation to provide a record supporting what he claims to be the district court's errors. See *State v. Kidd*, 293 Kan. 591, 601, 265 P.3d 1165 (2011) (party claiming error has obligation to provide sufficient record for appellate review); *Harman v. State*, No. 108,478, 2013 WL 3792407, at *1 (Kan. App. 2013) (unpublished opinion) ("When there are blanks in that record, appellate courts do not fill them in by making assumptions favoring the party claiming error in the district court."). Chang has not met that obligation with respect to the purported communications he had with A.S.

18

Absent a sufficient proffer, I cannot say Chang has shown the district court erred in its ultimate ruling excluding testimony or any other evidence about the communications between him and A.S. But I would go no further than that, so I decline to say the district court ruled correctly or even within its broad discretion, as the majority does. I simply don't know, and I can't tell from the record.

In short, Chang has neither identified nor shown reversible error based on the exclusion of the communications or, for that matter, on any other ground. I, therefore, agree we must affirm the jury verdict and the judgment.